138 N.J. 106 (1994)
649 A.2d 379
WASTE MANAGEMENT, INC., AND ITS PRESENT AND FORMER SUBSIDIARIES, WASTE MANAGEMENT INC. OF FLORIDA; WASTE MANAGEMENT OF ALABAMA, INC.; WASTE MANAGEMENT OF ARIZONA, INC.; WASTE MANAGEMENT OF COLORADO, INC.; WASTE MANAGEMENT OF CONNECTICUT, INC.; WASTE MANAGEMENT OF DELAWARE, INC.; WASTE MANAGEMENT OF ILLINOIS, INC.; WASTE MANAGEMENT OF KENTUCKY, INC.; WASTE MANAGEMENT OF MAINE, INC.; WASTE MANAGEMENT OF MARYLAND, INC.; WASTE MANAGEMENT OF MASSACHUSETTS, INC.; WASTE MANAGEMENT OF MICHIGAN, INC.; WASTE MANAGEMENT OF NEW HAMPSHIRE, INC.; WASTE MANAGEMENT OF NEW YORK, INC.; WASTE MANAGEMENT OF NORTH AMERICA, INC.; WASTE MANAGEMENT OF OHIO, INC.; WASTE MANAGEMENT OF OKLAHOMA, INC.; WASTE MANAGEMENT OF PENNSYLVANIA, INC.; WASTE MANAGEMENT OF SOUTH CAROLINA, INC.; WASTE MANAGEMENT OF WISCONSIN, INC.; WMI SAFETY SERVICES, INC.; WMI WASTE MANAGEMENT OF CANADA INC.; CHEMICAL WASTE MANAGEMENT, INC.; CHEMICAL WASTE MANAGEMENT OF NEW JERSEY, INC.; CHEMICAL WASTE MANAGEMENT OF KANSAS, INC.; SCA SERVICES, INC.; SCA DISPOSAL SERVICES OF NEW ENGLAND, INC.; SCA SERVICES OF INDIANA, INC.; SCA SERVICES OF NEW JERSEY, INC.; SCA SERVICES OF PENNSYLVANIA, INC.; ALDERFER & FRANK, INC.; CARL GULICK, INC.; CHEM-NUCLEAR SYSTEMS, INC.; CLEAN HARBORS OF BRAINTREE, INC.; CWM CHEMICAL SERVICES, INC.; HAZCO INTERNATIONAL, INC.; INDIANA WASTE SYSTEMS, INC.; INSTANT DISPOSAL SERVICE, INC.; INTERSTATE WASTE REMOVAL CO., INC.; LANDFILL & DEVELOPMENT COMPANY; MICHIGAN LANDFILL HOLDINGS, INC.; MODERN TRASH REMOVAL OF YORK, INC.; NU-WAY TRASH REMOVAL CORP.; OHIO WASTE SYSTEMS, INC.; REFUSE SERVICES, INC.; RITE-WAY SERVICE INC.; S.C.R. SYSTEMS, INC.; SANITARY LANDFILL, INC.; THE O'CONNOR CORPORATION; WASTECONTROL OF FLORIDA, INC.; WASTE DISPOSAL, INC.; WASTEQUID, INC.; WASTE RESOURCES CORPORATION; WASTE RESOURCES OF TAMPA BAY, INC.; WM ACQUIRING CORP., PLAINTIFFS-RESPONDENTS,
v.
THE ADMIRAL INSURANCE COMPANY, AETNA CASUALTY & SURETY COMPANY; AETNA CASUALTY COMPANY OF CANADA; ALLIANZ INSURANCE COMPANY; ALLIANZ UNDERWRITERS INSURANCE COMPANY; ALLSTATE INSURANCE COMPANY; AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA; AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY; AMERICAN EMPLOYERS' INSURANCE COMPANY; AMERICAN HOME ASSURANCE COMPANY; THE AMERICAN INSURANCE COMPANY; AMERICAN MOTORISTS INSURANCE COMPANY; AMERICAN NATIONAL FIRE INSURANCE COMPANY; AMERICAN POLICYHOLDERS' INSURANCE COMPANY; AMERICAN REINSURANCE COMPANY; ARGONAUT INSURANCE COMPANY; ASSOCIATED INDEMNITY CORPORATION; ASSOCIATED INTERNATIONAL INSURANCE COMPANY; BIRMINGHAM FIRE INSURANCE COMPANY OF PENNSYLVANIA; C.E. HEATH COMPENSATION AND LIABILITY INSURANCE COMPANY; CALIFORNIA UNION INSURANCE COMPANY; THE CAMDEN FIRE INSURANCE ASSOCIATION; THE CELINA MUTUAL INSURANCE COMPANY; CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA; CENTURY INDEMNITY COMPANY; CHICAGO INSURANCE COMPANY; CIGNA PROPERTY AND CASUALTY INSURANCE COMPANY; COLUMBIA CASUALTY COMPANY; COMMERCIAL UNION INSURANCE COMPANY; CONSTITUTION STATE INSURANCE COMPANY; CONTINENTAL CASUALTY COMPANY; THE CONTINENTAL INSURANCE COMPANY; CRUM AND FORSTER INSURANCE COMPANY; EMPLOYERS INSURANCE OF WAUSAU, A MUTUAL COMPANY; EMPLOYERS LIABILITY ASSURANCE CORPORATION, LIMITED; EMPLOYERS MUTUAL CASUALTY COMPANY; EMPLOYERS REINSURANCE CORPORATION; ERIC REINSURANCE COMPANY; EVANSTON INSURANCE COMPANY; FEDERAL INSURANCE COMPANY; THE FIDELITY AND CASUALTY COMPANY OF NEW YORK; FIREMAN'S FUND INSURANCE COMPANY; FIREMEN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY; FIRST STATE INSURANCE COMPANY; FREMONT INDEMNITY COMPANY; GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA; GENERAL CASUALTY COMPANY OF WISCONSIN; GIBRALTER CASUALTY COMPANY; GLOBE INDEMNITY COMPANY; GRANITE STATE INSURANCE COMPANY; GREAT AMERICAN INSURANCE COMPANY; GULF INSURANCE COMPANY; THE HANOVER INSURANCE COMPANY; HARLEYSVILLE MUTUAL INSURANCE COMPANY; HARTFORD ACCIDENT AND INDEMNITY COMPANY; HARTFORD CASUALTY INSURANCE COMPANY; HIGHLANDS INSURANCE COMPANY; THE HOME INDEMNITY COMPANY; THE HOME INSURANCE COMPANY; HUDSON INSURANCE COMPANY; INDIANA INSURANCE COMPANY; INSURANCE COMPANY OF NORTH AMERICA; THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA; INTERNATIONAL INSURANCE COMPANY; INTERNATIONAL SURPLUS LINES INSURANCE COMPANY; INTERSTATE FIRE & CASUALTY COMPANY; LEXINGTON INSURANCE COMPANY; LIBERTY MUTUAL INSURANCE COMPANY; MARYLAND CASUALTY COMPANY; NATIONAL AMERICAN INSURANCE COMPANY OF CALIFORNIA; NATIONAL FIRE INSURANCE COMPANY OF HARTFORD; NATIONAL GRANGE MUTUAL INSURANCE COMPANY; NATIONAL SURETY CORPORATION; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; NEW ENGLAND INSURANCE COMPANY; NEW ENGLAND REINSURANCE CORP.; THE NORTH RIVER INSURANCE COMPANY; THE NORTHERN ASSURANCE COMPANY OF AMERICA; NORTHWESTERN NATIONAL INSURANCE COMPANY; THE OHIO CASUALTY INSURANCE COMPANY; OLD REPUBLIC INSURANCE COMPANY; PACIFIC EMPLOYERS INSURANCE COMPANY; PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY; PHOENIX ASSURANCE COMPANY OF NEW YORK; PLANET INSURANCE COMPANY; POTOMAC INSURANCE COMPANY OF ILLINOIS; PRUDENTIAL REINSURANCE COMPANY; PURITAN INSURANCE COMPANY; RANGER INSURANCE COMPANY; RELIANCE INSURANCE COMPANY; ROYAL INDEMNITY COMPANY; ROYAL INSURANCE COMPANY OF AMERICA; SAFETY NATIONAL CASUALTY COMPANY; SECURITY INSURANCE COMPANY OF HARTFORD; SELECTIVE INSURANCE COMPANY OF AMERICA; THE SHELBY INSURANCE COMPANY; STONEWALL INSURANCE COMPANY; ST. PAUL FIRE AND MARINE INSURANCE COMPANY; THE ST. PAUL INSURANCE COMPANY; ST. PAUL MERCURY INSURANCE COMPANY; ST. PAUL SURPLUS LINES INSURANCE COMPANY; TRANSAMERICA INSURANCE COMPANY; TRANSPORTATION INSURANCE COMPANY; THE TRAVELERS INDEMNITY COMPANY; THE TRAVELERS INDEMNITY COMPANY OF RI; TWIN CITY FIRE INSURANCE COMPANY; UNIGARD SECURITY INSURANCE COMPANY; UNITED FIRE & CASUALTY COMPANY; UNITED STATES FIDELITY AND GUARANTY COMPANY; UNITED STATES FIRE INSURANCE COMPANY; VANLINER INSURANCE COMPANY; ZURICH INSURANCE COMPANY (US); UNDERWRITERS AT LLOYDS, LONDON; AND OTHER COMPANIES, INCLUDING: ALLIANZ INTERNATIONAL INSURANCE COMPANY LIMITED; BELLEFONTE INSURANCE COMPANY; BERMUDA FIRE & MARINE INSURANCE COMPANY LIMITED; COMPAGNIE D'ASSURANCES MARITIMES AERIENNES & TERRESTRES, S.A.; DART INSURANCE COMPANY LIMITED; DOMINION INSURANCE COMPANY LIMITED; EL PASO INSURANCE COMPANY LIMITED; EXCESS INSURANCE COMPANY LIMITED; FOLKSAM INTERNATIONAL INSURANCE COMPANY (UK) LIMITED; HEDDINGTON INSURANCE COMPANY (UK) LIMITED; LEXINGTON INSURANCE COMPANY; LONDON AND EDINBURGH GENERAL INSURANCE COMPANY LIMITED; MENTOR INSURANCE COMPANY (UK) LIMITED; MUTUAL REINSURANCE COMPANY LIMITED; NEW HAMPSHIRE INSURANCE COMPANY; PACIFIC AND GENERAL; SOUTHERN AMERICAN INSURANCE COMPANY; SOVEREIGN MARINE & GENERAL INSURANCE COMPANY LIMITED; SOVEREIGN MARINE & GENERAL INSURANCE COMPANY LIMTIED "C" A/C; SOVEREIGN MARINE & GENERAL INSURANCE COMPANY LIMITED NO. 12 A/C; STOREBRAND INSURANCE COMPANY (UK) LIMITED; STRONGHOLD INSURANCE COMPANY LIMITED; ST. KATHERINE INSURANCE COMPANY LIMITED; ST. KATHERINE INSURANCE COMPANY LIMITED (X A/C); TAISHO MARINE & FIRE INSURANCE COMPANY (UK) LIMITED; TERRA NOVA INSURANCE COMPANY; TERRA NOVA INSURANCE COMPANY LIMITED; TOKIO MARINE & FIRE INSURANCE COMPANY (UK) LIMITED; TUREGUM INSURANCE COMPANY; WALBROOK INSURANCE COMPANY LIMITED; WINTERTHUR SWISS INSURANCE COMPANY; AND YASUDA FIRE AND MARINE INSURANCE COMPANY (UK) LIMITED, DEFENDANTS, AND AUTO-OWNERS INSURANCE COMPANY; CANADIAN GENERAL INSURANCE COMPANY; COMMERCIAL UNION ASSURANCE COMPANY OF CANADA; ROYAL INSURANCE COMPANY OF CANADA; AND WELLINGTON INSURANCE COMPANY; DEFENDANTS-APPELLANTS.
The Supreme Court of New Jersey.
Argued September 28, 1993.
Decided October 13, 1994.
*115 John R. Casolaro, a member of the New York bar, argued the cause for appellant Canadian General Insurance Company and Eric Proshansky, a member of the New York bar, argued the cause for Wellington Insurance Company (Pearson and Shapiro, *116 attorneys for Canadian General Insurance Company; Tenzer, Greenblatt & Zunz, attorneys for Wellington Insurance Company; Herrick, Feinstein, attorneys for Commercial Union Assurance Company of Canada and Wilson, Elser, Moskowitz, Edelman & Dicker, attorneys for Royal Insurance Company of Canada; Casolaro, Proshansky, Ronald J. Levine, Fredric H. Pearson, William P. Krauss and Joseph C. Kaplan, on the joint letter briefs).
John A. Yeager, a member of the Michigan bar, argued the cause for appellant Auto Owners Insurance Company (Haggerty, Donohue & Monaghan, attorneys; Yeager and Walter E. Monaghan, on the brief).
David M. Jones, a member of the Massachusetts bar, argued the cause for respondents (Kerby, Cooper, English, Danis & Garvin, attorneys; Jones and Jerry Fitzgerald English, on the briefs).
Michael R. Magaril submitted a brief on behalf of amicus curiae Township of West Milford New Jersey (Anderson, Kill, Olick & Oshinsky, attorneys).
Carol A. Stevens submitted a brief on behalf of amici curiae The American Insurance Association and The National Association of Independent Insurers (Watson, Stevens, Fiorilla & Rutter, attorneys).
The opinion of the Court was delivered by CLIFFORD, J.
On this interlocutory appeal, two rulings of the trial court raise issues of first impression. In denying defense motions to dismiss this declaratory-judgment action, the court held, first, that a "territory of coverage" clause in an insurance policy, without more, is a sufficient basis on which to rest in personam jurisdiction over a nonresident insurance carrier. With that holding the trial court became the only court in this or any other jurisdiction to declare that a "territory of coverage" clause standing alone confers jurisdiction over an alien insurer. Second, the trial court *117 held that New Jersey's "interest nexus" in resolving massive environmental insurance-coverage cases comprehensively can, by itself, confer personal jurisdiction over foreign carriers with no ties whatsoever to this state.
Because we conclude that both holdings are erroneous, we vacate the trial court's order and remand for entry of judgment for defendants-appellants.

I
Plaintiffs are Waste Management, Inc., fifty-four of its present subsidiaries, and one of its former subsidiaries. They are engaged in the disposal of solid- and hazardous-waste products. Plaintiffs are subject to environmental damage claims by customers, governmental agencies, and others. Defendants, various insurers of plaintiffs, have denied coverage for those claims. Plaintiffs therefore brought this declaratory-judgment action to establish liability coverage for pollution-related damage at ninety-seven sites in twenty-two states and Canada. Seventeen of those sites lie in New Jersey.
Among the 150 defendant insurers are out-of-state carriers that have conducted no activities of any sort in New Jersey and whose policies, written elsewhere, contain no reference to New Jersey risks. Each of the policies, however, contains a "territory of coverage" clause, generally extending coverage to the United States and Canada. Examples of such clauses are: "The policy applies only to bodily injury or property damage * * * [that] occurs during the policy term as stated in the Declarations within the United States of America, its territories or possessions, Canada or Mexico * * *," and "This policy covers only within Canada and the Continental Limits of the United States of America (excluding Alaska)."
Many of the out-of-state insurers brought motions to have the declaratory-judgment action dismissed, principally on grounds of lack of personal jurisdiction and forum non conveniens. When the trial court denied the motions to dismiss, five of the defendant *118 insurers sought leave to appeal to the Appellate Division, which that court denied. We granted leave to appeal, 133 N.J. 414-15, 627 A.2d 1126 (1993).
The five carriers before us on this appeal have no connection with New Jersey, but their policies all contain "territory of coverage" clauses providing liability coverage for losses occurring in the United States or Canada. Four of those carriers are referred to as the Canadian Insurers: Canadian General Insurance Company, Commercial Union Assurance Company of Canada, Royal Insurance Company of Canada, and Wellington Insurance Company. The Canadian Insurers do no business in New Jersey, are not licensed to do business in New Jersey, and claim that they issued their respective policies only after ascertaining that their single insured in this litigation conducted operations in Canada alone. That insured, WMU Waste Management of Canada, Inc. (Waste Management of Canada), is neither licensed to do business in New Jersey nor involved in sites related to New Jersey. The sole site insured by the Canadian Insurers lies in Ontario and is the subject of litigation in that province's Supreme Court. Waste Management of Canada seeks, as part of this suit in New Jersey, a declaration that the Canadian Insurers are liable for any judgment entered by the Supreme Court of Ontario.
The Canadian Insurers appeal the denial of their motions to dismiss on both the jurisdiction and forum non conveniens issues. They argue that they will suffer irreparable injury, as contemplated by Rule 2:2-2(b) governing interlocutory appeals to this Court, if the decision below is sustained. They contend that if forced to defend in New Jersey on the coverage issue, they will lose the right to contest the resulting judgment in Canadian courts; that Canada is the appropriate forum because the insuring transaction and any insured event took place in Canada, where the site and the witnesses are located; and that subjecting them to the cost and complexity of this tangled litigation is unfair.
The fifth carrier on this appeal, Auto Owners Insurance Company (Auto Owners), raises only the claim that New Jersey courts *119 lack jurisdiction over it. Auto Owners is not authorized, licensed, or qualified to do business in New Jersey, nor has it ever issued a policy to a New Jersey domiciliary or insured any risks located in this state. It is a Michigan corporation that issued policies to businesses that operate waste-disposal facilities and conduct local waste-hauling activities in Michigan. It asserts that it has no minimum contacts with New Jersey and that the "territory of coverage" clause does not by itself afford a basis of jurisdiction.

II

A
The basic question is whether the trial court's determination that New Jersey has personal jurisdiction over these defendants runs afoul of due-process considerations. Our discussion of that issue starts with a restatement of some fundamental propositions.
If a cause of action arises directly out of a defendant's contacts with the forum state, the court's jurisdiction is "specific." Lebel v. Everglades Marina, Inc., 115 N.J. 317, 322, 558 A.2d 1252 (1989). If, however, the suit is not related directly to the defendant's contacts with the forum state, but is based instead on the defendant's continuous and systematic activities in the forum, then the State's exercise of jurisdiction is "general." Id. at 323, 558 A.2d 1252; see also Helicopteros Nacionales de Colum., S.A. v. Hall, 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404, 411 n. 9 (1984) (discussing general jurisdiction).
In Hanson v. Denckla, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283, 1296 (1958), the Supreme Court, striking down an exercise of personal jurisdiction over out-of-state defendants, pointed to a shift from the rigid rule of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878), which had required actual presence in a state, to a more flexible standard of "minimum contacts" under International Shoe v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "Minimum contacts" are the threshold requirements for specific personal jurisdiction. Hanson, supra, 357 U.S. *120 at 253, 78 S.Ct. at 1239-40, 2 L.Ed.2d at 1298. "[I]t is essential that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws." Id. at 253, 78 S.Ct. at 1240, 2 L.Ed.2d at 1298 (citing International Shoe, supra, 326 U.S. at 319, 66 S.Ct. at 159, 90 L.Ed. at 103).
In World-Wide Volkswagen v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court clarified the purposes of the "minimum contacts" doctrine: to protect a defendant against litigating in an inconvenient forum and to ensure that States not exceed their jurisdictional limits under our federal system. Id. at 291-92, 100 S.Ct. at 564, 62 L.Ed.2d at 498. The first interest, that of ensuring against litigating in inconvenient forums, requires that "maintenance of the suit `* * * not offend "traditional notions of fair play and substantial justice."'" Id. at 292, 100 S.Ct. at 564, 62 L.Ed.2d at 498 (quoting International Shoe, supra, 326 U.S. at 316, 66 S.Ct. at 154, 90 L.Ed. at 102 (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278, 283 (1940))). That end is achieved through the requirement that "[t]he relationship between the defendant and the forum * * * be such that it is `reasonable * * * to require the corporation to defend the particular suit which is brought there.'" Ibid. (quoting International Shoe, supra, 326 U.S. at 317, 66 S.Ct. at 158, 90 L.Ed. at 102 (omission in original)). The second interest, the jurisdictional limitations, "has been relaxed substantially over the years" because of the "fundamental transformation in the American economy." Id. at 292-93, 100 S.Ct. at 565, 62 L.Ed.2d at 498. Nonetheless, minimum contacts remain the threshold requirement of jurisdiction. Id. at 294, 100 S.Ct. at 565-66, 62 L.Ed.2d at 499-500.
Critical to the due-process analysis is the question whether the defendant should reasonably anticipate being haled into court in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542 (1985). The record must demonstrate that the defendant has purposefully *121 availed itself of the privilege of engaging in activities within the forum state, thereby gaining the benefits and protections of its laws. Id. at 475, 105 S.Ct. at 2183, 85 L.Ed.2d at 542. In that way defendants are protected against being haled into court in a foreign jurisdiction solely on the basis of random, fortuitous, or attenuated contacts or as a result of the unilateral activity of some other party. Ibid.
Once the court finds that a defendant has purposefully established minimum contacts within the forum state, other factors, such as the State's interests in adjudicating the suit and the plaintiff's interest in obtaining relief, may properly be weighed in determining whether those minimum contacts establish jurisdiction consistent with considerations of fair play and substantial justice. Those considerations may even "serve to establish the reasonableness of jurisdiction upon a lesser showing of jurisdiction than would otherwise be required." Id. at 477, 105 S.Ct. at 2184, 85 L.Ed.2d at 543-44. However, a court may not weigh those other factors until it has found that the defendant has experienced sufficient minimum contacts to satisfy the threshold determination.
In Burger King, the Supreme Court considered whether a "contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's forum." 471 U.S. at 478, 105 S.Ct. at 2185, 85 L.Ed.2d at 545. "[T]he answer," the Court declared, "clearly is that it cannot." Ibid. That answer is based on the fact that a contract is "`ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.'" Id. at 479, 105 S.Ct. at 2185, 85 L.Ed.2d at 545 (quoting Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 317, 63 S.Ct. 602, 604-05, 87 L.Ed. 777, 782 (1943)). Thus, "in determining whether the defendant purposefully established minimum contacts with the forum," courts must consider such factors as "prior negotiations and contemplated future consequences, along with the *122 terms of the contract and the parties' actual course of dealing." Id. at 479, 105 S.Ct. at 2185, 85 L.Ed.2d at 545.
In Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the Supreme Court affirmed the rule that the substantial connection between the defendant and the forum state necessary for a finding of minimum contacts "must come about by an action of the defendant purposefully directed toward the forum State." Id. at 112, 107 S.Ct. at 1032, 94 L.Ed.2d at 104. The Court also listed several factors for courts to evaluate when determining the reasonableness of an exercise of jurisdiction: the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in efficient resolution of controversies, and the shared interest of the States in furthering fundamental substantive social policies. Id. at 113, 107 S.Ct. at 1033, 94 L.Ed.2d at 105. Moreover, when the suit involves an alien defendant, a court must be "unwilling[] to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State." Id. at 115, 107 S.Ct. at 1034, 94 L.Ed.2d at 106.

B
Ensuring that an application of the minimum-contacts test satisfies the jurisdictional requirement of due process calls for a case-by-case analysis of a defendant's relationship with the forum state. Charles Gendler & Co. v. Telecom Equip. Corp., 102 N.J. 460, 470, 508 A.2d 1127 (1986). That analysis has two parts. The first is to determine whether minimum contacts exist at all. That first step "ensures that a state's grasp does not exceed its jurisdictional reach," and, in doing so, protects the primary interest of the restriction: preserving "the defendant's liberty interest in not being subject to the entry of a judgment in a jurisdiction with which the defendant does not have sufficient minimum contacts." Ibid. The second part of the analysis is to weigh "the sufficiency of the contacts for jurisdictional purposes[, which] *123 depends on `the relationship among the defendant, the forum, and the litigation * * *.'" Id. at 471, 508 A.2d 1127 (quoting Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683, 698 (1977) (omission in original)).
The sufficiency of those contacts depends on "the purposeful act of the defendant, not the unilateral activity of another who merely claims a relationship to the defendant." Ibid. In weighing the sufficiency of the contacts, this Court considers whether the cause of action arose out of the defendant's contacts within this State. If the two are related, the contacts support the exercise of jurisdiction. Ibid. If the cause of action is unrelated to the contacts, "the defendant's contacts must be so continuous and substantial as to justify subjecting the defendant to jurisdiction." Id. at 472, 508 A.2d 1127. The more the defendant has purposefully directed its activities to the forum state, and the greater the benefits it has received from its contacts with the forum state, the more reasonable the exercise of jurisdiction becomes. Id. at 473, 508 A.2d 1127.
The Supreme Court has established a trend of "`expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents.'" Ibid. (quoting McGee v. International Life Ins. Co., 355 U.S. 220, 222, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226 (1957)). "Focusing on the foreseeability of being haled into court," id. at 475, 508 A.2d 1127, the Court adopted the stream-of-commerce theory as an "independent basis to satisfy the minimum-contacts standard." Id. at 476, 508 A.2d 1127. In Gendler, we adopted that theory, noting that it would not subject local retailers and distributors to foreign jurisdiction, because unlike the markets of major distributors, the local operators' foreseeable market is constrained. Id. at 477, 508 A.2d 1127. Moreover, a defendant that "prohibits distribution of its products in a particular state would not reasonably expect its products to be sold in that state," Id. at 481, 508 A.2d 1127, and would therefore not be subject to the jurisdiction of that state on a stream-of-commerce theory.
*124 If, however, the minimum-contacts threshold is met through the actions of the defendant without regard to the plaintiff's unilateral activities, a court, in considering the relationship between the defendant, the forum, and the litigation, may then consider the plaintiff's residence in the forum state to determine whether the defendant's contacts to that forum state justify an exercise of jurisdiction. In Lebel, supra, we found that a Florida seller of a luxury boat became subject to this State's jurisdiction when he telephoned his New Jersey buyer, mailed the contract of sale to New Jersey, and received payment from New Jersey. We concluded that those facts supported an exercise of specific jurisdiction over that sale, because "the defendant purposely directed his activities at the forum state." 115 N.J. at 327, 558 A.2d 1252. Thus, we held that a "`plaintiff's residence in the forum may, because of defendant's relationship with the plaintiff, enhance the defendant's contacts with the forum.'" Id. at 327, 558 A.2d 1252 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 780, 104 S.Ct. 1473, 1481, 79 L.Ed.2d 790, 801 (1984)).
Such a finding of enhancement of defendant's contacts must be based on the relationship of the plaintiff's residence in the forum state to the transaction with the defendant that gives rise to the suit  that is, the defendant must avail itself of the plaintiff's residence in the transaction. Put differently, the defendant must be aware that the transaction "will have direct consequences in [the forum state] such that it should [be] aware of the possibility of litigation arising in that forum." Id. at 328, 558 A.2d 1252. In measuring the defendant's expectations concerning that possibility, we consider the facts of the case under the World-Wide Volkswagen standard of reasonable anticipation of being haled into court. See Lebel, supra, 115 N.J. at 330, 558 A.2d 1252.
Once the defendant is found to have minimum contacts to the forum, "the `fair play and substantial justice' inquiry must still be made." Id. at 328, 558 A.2d 1252. That inquiry places the burden on the defendant to make a "`compelling case'" that some consideration makes the exercise of jurisdiction unreasonable. *125 Ibid. (quoting Burger King, supra, 471 U.S. at 477, 105 S.Ct. at 2184, 85 L.Ed.2d at 544). In Lebel, we gave as examples of such considerations the factors listed in Asahi, supra, 480 U.S. at 113, 107 S.Ct. at 1034, 94 L.Ed.2d at 105: the burden on defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in efficient resolution of disputes, and the shared interest of the states in furthering fundamental substantive social policies. We further observed that the burden of a defendant coming to the plaintiff's state, as opposed to the plaintiff going to the defendant's home state, is too slight an imbalance to defeat jurisdiction. Id. 115 N.J. at 328-29, 558 A.2d 1252. As the Appellate Division has properly noted, "In actions based on contract, plaintiff's selection of forum will not be disturbed except in the most exceptional of circumstances, in recognition of the fact that such transactions have `evidential roots in several jurisdictions.'" Star Video Entertainment v. Video U.S.A. Assocs., 253 N.J. Super. 216, 226-27, 601 A.2d 724 (1992) (citation omitted) (quoting Starr v. Berry, 25 N.J. 573, 587, 138 A.2d 44 (1958)). In those suits based on contract in which the defendant has minimum contacts to the forum state, we look to whether the forum is manifestly inappropriate or chosen for purposes of vexation or harassment. Id. at 227, 601 A.2d 724.

III

A
The Supreme Court cases discussed above reveal a common thread in their factual determinations on the existence of minimum contacts. In Hanson, supra, the Court ruled that no minimum contacts with Florida existed when the defendant, an administrator of a trust, had no offices or trust assets and did no business or solicitation in Florida. 357 U.S. at 251, 78 S.Ct. at 1238, 2 L.Ed.2d at 1296. The defendant in World-Wide Volkswagen, supra, who had made no attempt to serve the Oklahoma market or avail itself of the privileges and benefits of Oklahoma law, was held not to have had minimum contacts sufficient to support that State's *126 exercise of jurisdiction. 444 U.S. at 295, 100 S.Ct. at 566, 62 L.Ed.2d at 500. In Asahi, supra, the defendant was found to have had no minimum contacts to California when it did not purposely avail itself of the California market and had no control over the distribution system that brought its products to California. 480 U.S. at 112-13, 107 S.Ct. at 1032, 94 L.Ed.2d at 105. In contrast is the defendant in Burger King, supra, who had accepted a Florida franchise, had reached out to Florida to avail himself of the benefits of doing business there, had voluntarily accepted a Florida corporation's regulation of his business, and had agreed to a Florida choice-of-law provision in the contract. He was found to have had minimum contacts sufficient to justify an exercise of jurisdiction by Florida. 471 U.S. at 479-80, 105 S.Ct. at 2186, 85 L.Ed.2d at 545-56.
The foregoing cases demonstrate that the existence of minimum contacts turns on the presence or absence of intentional acts of the defendant to avail itself of some benefit of a forum state. An intentional act calculated to create an actionable event in a forum state will give that state jurisdiction over the actor. Calder v. Jones, 465 U.S. 783, 791, 104 S.Ct. 1482, 1488, 79 L.Ed.2d 804, 813 (1984) (publishing libelous article in magazine sold in California, and causing greatest degree of harm in California, gave that state jurisdiction over reporter and editor). A defendant may constructively consent to the personal jurisdiction of a state court through voluntary use of certain procedures of that state. Insurance Corp. of Ire. Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 704, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492, 502 (1982). Jurisdiction may be created through a contract that has substantial connections to the forum state. McGee, supra, 355 U.S. at 223, 78 S.Ct. at 201, 2 L.Ed.2d at 226 (holding that insurance contract delivered in California to a California resident, and premiums mailed from California created sufficient contacts to support finding of jurisdiction on contract). Similarly, an arbitration clause evidences consent to in personam jurisdiction for *127 orders compelling arbitration. Victory Transp. Inc. v. Comisaria Gen., 336 F.2d 354, 363 (2d Cir.1964).
However, not every act of a potential defendant is sufficient to satisfy the jurisdictional requirement of intentional availment. "[M]ere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of jurisdiction over a nonresident [defendant] in a cause of action not related to those purchase transactions." Helicopteros, supra, 466 U.S. at 418, 104 S.Ct. at 1874, 80 L.Ed.2d at 413. The Ninth Circuit has decided that a nonresident defendant insurer's "failure to structure its policy to exclude the possibility of defending a suit wherever an injured claimant requires medical care cannot * * * fairly be characterized as an act by which [defendant] has purposefully availed itself of the privilege of conducting activities in California." Hunt v. Erie Ins. Group, 728 F.2d 1244, 1247 (1984). We adopt the proposition that absent a duty to act, "purposeful availment" of the privileges of a forum state cannot normally include what a nonresident defendant has failed to do. Finally, if a suit contains multiple defendants, their individual contacts to the forum state cannot be aggregated to find minimum contacts for a single defendant. Similarly, jurisdiction over one defendant may not be based on the activities of another defendant, nor on the plaintiff's connection to the forum state. The requirements of minimum contacts analysis "must be met as to each defendant over whom a state court exercises jurisdiction." Rush v. Savchuk, 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516, 527 (1980).

B
In light of the foregoing analysis, we consider the Canadian Insurers' and Auto Owners' contacts to New Jersey. The Canadian Insurers engage in no activity in this state, are not licensed to do business in New Jersey, and they insured Waste Management of Canada only after ascertaining that their insured had no operations in this country. The sole connection to New Jersey found by the trial court was the "territory of coverage" *128 clause contained in the Canadian Insurers' contracts. We hold that in the absence of a forum-related event, a "territory of coverage" clause alone does not create a sufficient basis on which to rest jurisdiction in this state. See, e.g., Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 913-14 (9th Cir.1990); Rossman v. State Farm Mut. Auto Ins. Co., 832 F.2d 282, 286 (4th Cir.1987); Commonwealth of Puerto Rico v. The SS Zoe Colocotroni, 628 F.2d 652, 668 (1st Cir.1980); Batton v. Tennessee Farmers Mut. Ins. Co., 153 Ariz. 268, 736 P.2d 2, 6 (1987); Meyer v. Auto Club Ins. Ass'n, 492 So.2d 1314, 1316 (Fla. 1986); Guardian Royal Exch. Assurance v. English China Clays, P.L.C., 815 S.W.2d 223, 227 (Tex. 1991). We recognize both the trend to expand the scope of jurisdiction over nonresidents and the special interest that a state may have in the field of insurance, see Avdel Corp. v. Mecure, 58 N.J. 264, 272, 277 A.2d 207 (1971), but those circumstances do not obviate the need to meet the threshold requirement for personal jurisdiction, namely, that the defendant create minimum contacts with this state by purposefully availing itself of some benefit of doing business here. Because no contacts exist between New Jersey and the Canadian Insurers, those defendants cannot be made subject to this State's personal jurisdiction. We therefore do not reach the "fair play and substantial justice" inquiry.
Similarly, we find no contacts by defendant Auto Insurers with New Jersey. As with the Canadian Insurers, Auto Insurers has insured entities that have no connection of their own to this state. Its insureds' sole tie to New Jersey is their parent conglomerate. That does not satisfy the requirement of the insurer's purposeful availment of the benefits and privileges of doing business in New Jersey. Because we again conclude that the threshold requirement of minimum contacts is absent, we do not consider whether jurisdiction could be exercised consistent with "traditional notions of fair play and substantial justice." As a result, our state courts may not exercise jurisdiction over defendant Auto Insurers.

*129 IV
We need not dwell at length on the trial court's alternative basis for finding jurisdiction over these non-domiciliary defendants, namely, that even without a "territory of coverage" clause, New Jersey courts could assert in personam jurisdiction over nonresident insurers on the basis of this State's interest in not fragmenting massive litigation. According to the court, the contact establishing a "substantial connection" with the forum state is New Jersey's interest "in providing effective means of redress for its residents when the insurers refuse to pay claims." Even assuming the validity of the trial court's theory, plaintiffs-insureds in this action against defendants-appellants are all nonresidents seeking coverage for environmental damage occurring beyond New Jersey's borders. Moreover, the rulings of the Supreme Court and of this Court, as discussed above, require at least some minimum contact of the defendant with the forum asserting in personam jurisdiction.
The trial court's reliance on the ruling of the federal district court in Ashley v. Abbott Laboratories, 789 F. Supp. 552 (E.D.N.Y. 1992) (hereinafter DES Cases), for a contrary result is misplaced. In that case, the court fashioned a progressive jurisdictional approach to find nonresident manufacturers of the drug diethyl-stilbestrol (DES) amenable to a massive products-liability action brought in New York. The DES Cases test for mass torts requires a determination of whether the forum has an appreciable interest in the litigation and, if so, whether the defendant would experience a relatively substantial hardship were it required to defend in the forum state. Id. at 587. Comparing the massive insurance-coverage case before us to a mass-tort case, the trial court ruled that "sound judicial policy" justified application of the DES Cases test to insurance-coverage cases "since it is in the coverage cases that relief affects not only the tort claimant, but also the insureds."
The trial court's analogy breaks down in several critical areas. DES Cases was premised on the existence of a uniform tort of *130 massive proportions involving a single generic product, DES, with a uniform mechanism of injury. Here, each insurer's liability will be governed by the specific terms of its own contracts of insurance. Second, without DES Cases' unprecedented jurisdictional formulation, harm caused to New York residents because of exposure to DES during pregnancy in all likelihood would have gone unremedied because no other forum embraced the "market share" theory of product liability, as developed by the New York Court of Appeals in Hymowitz v. Eli Lilly & Co., 73 N.Y.2d 487, 541 N.Y.S.2d 941, 539 N.E.2d 1069, cert. denied, 493 U.S. 944, 110 S.Ct. 350, 107 L.Ed.2d 338 (1989). DES Cases, supra, 789 F. Supp. at 576. Accordingly, the DES Cases' holding was limited strictly to actions brought by New York plaintiffs for injuries occurring in New York. Id. at 569.
In this case, other, perhaps even more appropriate, forums were available to the nonresident plaintiffs had they chosen to litigate the coverage claims separately. Most significantly, the court in DES Cases, despite its rejection of traditional "minimum contacts" analysis, rested its holding to a large extent on the theory that the nonresident DES manufacturers were participants and derived benefits from a national DES market whose alleged harms to plaintiffs in a major market segment (New York) were reasonably foreseeable to the defendants.
Similarly misplaced is the trial court's reliance on the Appellate Division's opinion in Westinghouse Electric Corp. v. Liberty Mutual Ins. Co., 233 N.J. Super. 463, 559 A.2d 435 (1989), another massive environmental-insurance coverage case. In that case, Westinghouse brought two declaratory-judgment actions against 144 American and foreign insurance carriers for coverage of pollution liability at eighty-one sites located in twenty-three states. The policies had been issued over the course of a twenty-five-year period as part of Westinghouse's integrated corporate-insurance program. The Appellate Division determined that "[i]t is only the single comprehensive action, designed to adjudicate the entire controversy between the litigants, [that] can protect both the court *131 and the parties" from the "subversive" effects of "piecemeal litigation" and "fractionalization." Id. at 470-71, 559 A.2d 435. The trial court in this case recognized that Westinghouse was not "on all fours" with the case before us, but concluded that the differences between the two cases "do not justify the utilization of different rules or concepts." However, the trial court appears to have skipped over the most significant distinction: in Westinghouse, no question existed that in personam jurisdiction had been properly exercised over all the parties. Westinghouse addressed issues of forum non conveniens and case-management, not of jurisdiction. Id. at 465-66, 559 A.2d 435.
The requisite due-process analysis must focus principally on substantial justice and fundamental fairness, not on economy and convenience. New Jersey's "interest nexus" therefore cannot serve as an independent basis for assertion of in personam jurisdiction.

V
In light of our disposition of the jurisdiction issue, we do not reach the Canadian Insurers' claim that they are entitled to a dismissal on grounds of forum non conveniens, the merits of which we perceive to be flimsy at best. See D'Agostino v. Johnson & Johnson, 115 N.J. 491, 495-97, 559 A.2d 420 (1989); Westinghouse Elec. Corp., supra, 233 N.J. Super. at 469-70, 559 A.2d 435.

VI
The order of the trial court is vacated and the cause remanded to the Law Division for entry there of a judgment of dismissal in favor of defendants-appellants.
O'HERN, J., concurring.
I concur in the judgment of the Court. The exercise of jurisdiction in this case would offend the traditional notions of fair play *132 and substantial justice that infuse the Due Process Clause of the Fourteenth Amendment of the United States Constitution. I disagree, however, that a territory-of-coverage clause in an insurance policy is insufficient to establish the minimum contacts that make up the first prong of the two-part test for determining when jurisdiction may be exercised over a non-resident defendant.
I need not set forth the principles recently restated in cases such as Lebel v. Everglades Marina, Inc., 115 N.J. 317, 558 A.2d 1252 (1989). Suffice it to stay with the basics:
[D]ue process requires only that in order to subject a defendant to a judgment in personam, if [the defendant] be not present within the territory of the forum, [the defendant] have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."
[International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278, 283 (1940)).]
In the context of specific jurisdiction (a lawsuit related to the contacts), the minimum-contacts requirement must result from the defendant's purposeful conduct, not from the unilateral activities of the plaintiff. Lebel, supra, 115 N.J. at 323, 558 A.2d 1252. A territory-of-coverage clause can establish the minimum contacts sufficient to sustain jurisdiction. The Texas Supreme Court has held:
[W]hen the nonresident defendant is an insurance company, the following factors, when appropriate, should be considered when determining whether the nonresident defendant has purposely established "minimum contacts" with the forum state: (a) the insurer's awareness that it was responsible to cover losses arising from a substantial subject of insurance regularly present in the forum state; and (b) the nature of the particular insurance contract and its coverage.
[Guardian Royal Exch. Assurance Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 227 (1991).]
Applying the Guardian decision in Malaysia British Assurance v. El Paso Reyco, Inc., 830 S.W.2d 919 (Tex. 1992), the court explained that a policy that would reinsure a primary insurance company for claims, including those of some Texas residents, established a "twice-removed contact with Texas" and as such was not sufficient for in personam jurisdiction. Id. at 921; see also Domtar, Inc. v. Niagara Fire Ins. Co., 518 N.W.2d 58, 62 (Minn. *133 Ct.App. 1994), review granted (holding that non-resident insurer "should have expected coverage disputes [in the Minnesota territory of coverage] to be resolved in the same forum as the underlying action."). Under those principles, a territory-of-coverage clause would establish the minimum contacts sufficient to sustain jurisdiction in New Jersey.
In this multi-faceted litigation, however, the New Jersey coverage issues now appear minor, at best. At the time of the Law Division decision in this case, a thesis of insurance-coverage disputes was that policies could contain a global declaration of coverage. See Westinghouse Elec. Corp. v. Liberty Mut. Ins. Co., 233 N.J. Super. 463, 476, 559 A.2d 435 (App.Div. 1989). However, Gilbert Spruance Co. v. Pennsylvania Manufacturers' Ass'n Insurance Co., 134 N.J. 96, 629 A.2d 885 (1993), effectively douses that pursuit by emphasizing that coverage issues are generally to be resolved on the basis of the location of the insured risk.
Thus, a New Jersey Court adjudicating the issues in controversy in this case would be required, under the principles of Gilbert Spruance, to address questions of Michigan and Canadian law because at least two of the insured risks in controversy are located in those jurisdictions.
Under those circumstances, the limited nature of the contacts with New Jersey serves more properly to assess the second prong of the jurisdictional test  whether to entertain jurisdiction would offend traditional notions of fair play and substantial justice. That determination requires an evaluation of such factors as "the burden on the defendant, the interests of the forum State, * * * the plaintiff's interest in obtaining relief[,] * * * `the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'" Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 113, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92, 105 (1987) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 100 S.Ct. 559, 562, 62 L.Ed.2d 490, 498 (1980)).
*134 In this case, what renders jurisdiction unreasonable is the limited interest of New Jersey as the forum state in resolving these controversies. The fact that New Jersey courts would have to decide foreign law, balanced against the shared interests of involved territories pursuing their substantive social policies, illustrates that point. The environmental concerns of the other jurisdictions make adjudication in those territories more desirable. See Gilbert Spruance, supra, 134 N.J. at 98, 629 A.2d 885. Those jurisdictions have the "dominant significant relationship" to the insured risk. Id. at 112, 629 A.2d 885. Therefore, New Jersey does not have jurisdiction over defendants.
Justice O'HERN, concurring in result.
For Vacation and Remandment  Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN  7.
Opposed  None.