**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0300-17T4

INTER-NATION CAPITAL
MANAGEMENT CORP. (PANAMA),
S.A., STATIOL INC., S.A.,
INTER-NATION CAPITAL GROUP,
INC. and JOHN KELLENYI,

    Plaintiffs-Respondents,

v.

METRO COUNTRY CLUB, S.A.,
MEDIA GLOBAL FINANCE LTD. and
LUIS JOSE ASILIS,

    Defendants-Appellants.

_____

        Argued February 5, 2018 - Decided July 13, 2018

        Before Judges Accurso, Vernoia and
        DeAlmeida.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Essex County, Docket No.
        C-000054-17.

        Jorge A. Mestre (Rivero Mestre LLP) of the
        Florida bar, admitted pro hac vice, argued
        the cause for appellants (Bertone Piccini,
        LLP, and Jorge A. Mestre, attorneys;
        Cristina Z. Sinclair and Marc W. Garber, of
        counsel;  Jorge A. Mestre and Amanda M.
        McGovern (Rivero Mestre LLP) of the Florida

bar, admitted pro hac vice, of counsel and on the briefs; Daniel Alvarez Sox (Rivero Mestre LLP) of the Florida bar, admitted pro hac vice, on the briefs).

Michael J. Geraghty argued the cause for respondents (Sills Cummis & Gross PC, attorneys; Michael J. Geraghty, of counsel and on the brief; Kenneth F. Oettle, on the brief).

PER CURIAM

Defendants Metro Country Club, Media Global Finance and Luis Asilis appeal on leave granted from the Chancery Division's denial of their motion to dismiss the complaint filed by plaintiffs Inter-Nation Capital Management Corp. (Panama), Statiol Inc., Inter-Nation Capital Management Group and John Kellenyi for lack of personal jurisdiction. We affirm, substantially for the reasons expressed by Judge Kessler in his cogent and comprehensive opinion from the bench on July 21, 2017.

Metro Country Club is a residential golf club community in the Dominican Republic, organized under the laws of that country. Asilis, a citizen of the Dominican Republic, is president of Metro and its subsidiary, Media Global Finance, a company devoted to developing and operating residential communities and resorts in the Dominican Republic. Media Global is organized under the laws of the British Virgin Islands,

although its principal place of business is in the Dominican Republic.

In February 2012, Asilis called Alberto Fernandez in his office in Maplewood looking for financing. The two met when Fernandez, a New Jersey resident, purchased a vacation home in Metro in 2000 and told Asilis he did financial advising and consulting internationally through his New Jersey companies. When Fernandez said he was interested, Asilis told him Carlos Cortina, Metro's chief financial officer, would call him to discuss particulars.

Cortina called Fernandez at his Maplewood office, explaining that Metro had a multi-million dollar loan, guaranteed by Media Global, coming due in a few weeks' time. Metro and Media Global needed financing to pay off the loan or have the loan and collateral assigned to a new lender. Fernandez agreed to solicit investors through his investment consulting business, Inter-Nation Capital Management Group, a New Jersey corporation, for a fee payable on the closing of the transaction, conditioned on the loan being enforceable in the United States.

Fernandez solicited Statiol Inc., S.A., a Panamanian company having a principal place of business in Chile and John Kellenyi, another Maplewood resident, as investors, along with

Inter-Nation Capital Management Corp., a Panamanian corporation with its principal place of business in Maplewood, which is a wholly-owned subsidiary of Inter-Nation Capital Management Group, formed to hold Fernandez's personal investments. Cortina traveled to New Jersey to meet with Fernandez in the Inter-Nation offices in Maplewood. Cortina advised Fernandez that Metro was working on long-term financing from IVO Capital Partners, an international investment firm. Cortina explained Metro and Media Global needed approximately $4 million in bridge financing only until the IVO financing was in place. Fernandez, acting on behalf of Statiol, Kellenyi and Inter-Nation Capital Management Corp., began negotiating the terms of a loan purchase and refinancing with Cortina.

In March, Asilis and Fernandez negotiated the terms of the bridge loan from Statiol, Kellenyi and Inter-Nation Capital Management Corp., acting as an informal lending group, to Metro, guaranteed by Media Global and secured by various collateral through a series of phone calls and email messages to Fernandez in New Jersey. Asilis assured Fernandez in the course of those negotiations that Metro had a firm commitment for long-term financing from IVO to close in 2013 and was only seeking bridge financing from the lending group. Based on Asilis' representation, the three-member lending group agreed to loan

A-0300-17T4

Metro $6 million, $4 million to purchase Metro's outstanding loan and the remainder to refinance a commercial paper obligation and fund working capital.

The lending group took an assignment of the loan and collateral documents and entered into a "Frame Agreement" with Metro amending the prior loan documents and increasing the principal amount of the loan to $6 million (later increased to $6.5 million), subject to Metro's delivery of three promissory notes to the lending group. The Frame Agreement is expressly governed by New Jersey law and was executed by Fernandez and Kellenyi in New Jersey.

Metro eventually defaulted on the payments, although not before making certain payments required under the loan documents by wire transfer to various banks in the United States, including to Inter-Nation Capital Management Corp. to Valley National Bank in Maplewood. Fernandez contends Cortina admitted after the default that Metro had not had a firm commitment for long-term financing from IVO as Asilis had assured Fernandez before the lending group committed to making the loan and could not pay the lending group what it was owed without such financing. Notwithstanding that the lending group entered into a standstill agreement with Metro and Media Global agreeing to forbear payment on the outstanding aggregate amount then due and

5

owing of $7,896,111.14 for eighteen months in order to permit Metro and Media Global to obtain other financing, Metro ultimately defaulted on that agreement as well, resulting in the complaint plaintiffs filed in the Chancery Division for specific performance of Metro's obligations to produce books and records, as well as for breach of contract against both Metro and Media Global and fraud against both those defendants and Asilis.

Defendants moved to dismiss the complaint, arguing they have no contacts with New Jersey. Specifically, defendants contended the properties, businesses, collateral and the business interests at issue in the litigation are in the Dominican Republic. They argued they made no "purposeful foray" into New Jersey, as that term was defined in Bayway Refining Co. v. State Utilities, Inc., 333 N.J. Super. 420, 431 (App. Div. 2000), and instead that the dispute arose following plaintiffs' contacts and purposeful investment in the Dominican Republic.

Judge Kessler rejected those arguments. Applying the test of Waste Management v. Admiral Insurance Co., 138 N.J. 106, 122 (1994), the judge had no hesitation in finding defendants had sufficient minimum contacts to establish specific jurisdiction in New Jersey. The judge found Asilis initiated the loan agreement between Metro and Media Global and defendants when he telephoned Fernandez in New Jersey to seek financing, rejecting

6

defendants' claim that Fernandez initiated the contact by marketing his ability to obtain investors and financing to Metro in 2000.

The judge also rejected defendants' argument that their contacts with New Jersey were only incidental to Fernandez's unilateral decision to be in New Jersey, instead of his domicile in the Dominican Republic, when he was negotiating the loan in February 2012. The judge was unpersuaded by the fact that Fernandez owned a vacation home and may have maintained a second domicile in the Dominican Republic. Defendants did not dispute that Fernandez was a New Jersey resident when they solicited him in New Jersey. More important, they followed-up that contact by sending Cortina to New Jersey to meet with Fernandez to obtain investors, one of whom, Kellenyi, they knew resided in New Jersey. Defendants thereafter continued the negotiations through telephone and email directed to Fernandez in New Jersey, leading to an agreement governed by New Jersey law.

Considering the extent and variety of their contacts, the judge was satisfied defendants purposefully availed themselves of the State's benefits and "should 'reasonably anticipate being haled into court [in the forum state].'" Bayway Ref. Co., 333 N.J. Super. at 429 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). Judge Kessler found

defendants, as the Florida boat seller in <u>Lebel v. Everglades Marina, Inc.</u>, 115 N.J. 317, 320-22 (1989), obtained a significant benefit, here bridge financing of over $6 million, by soliciting a New Jersey resident, in New Jersey, to obtain the money. Judge Kessler reasoned that in reaching into New Jersey for the loan, defendants "impliedly understood that they could be haled into a New Jersey court" in the event they failed to repay it. The judge found Asilis' allegedly false statement about the IVO loan commitment made to induce plaintiffs to make the loan likewise satisfied the test for minimum contacts. <u>See id.</u> at 326 ("Where a defendant knowingly sends into a state a false statement, intending that it should then be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state.") (quoting <u>Vishay Intertechnology, Inc. v. Delta Int'l Corp.</u>, 696 F.2d 1062, 1066 (4th Cir. 1982)).

Judge Kessler further found suit in New Jersey would "not offend 'traditional notions of fair play and substantial justice.'" <u>Waste Mgmt.</u>, 138 N.J. at 120 (quoting <u>World-Wide Volkswagen</u>, 444 U.S. at 292). He found New Jersey certainly had an interest in carrying out its law and protecting those residents who lend funds in good faith, which outweighed any inconvenience to defendants in litigating in New Jersey,

8                                          A-0300-17T4

particularly where defendants had already sent a representative to the State in connection with the loan.

Defendants appeal, reprising the arguments they made to the trial court and adding the court erred in exercising personal jurisdiction over Media Global as the court failed to make any findings of fact specific to that entity to establish its minimum contacts with New Jersey.

Our review of the record convinces us that none of those arguments is of sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). There is no question but that "[t]he requirements of minimum contacts analysis 'must be met as to each defendant over whom a state court exercises jurisdiction.'" Waste Mgmt., 138 N.J. at 127 (quoting Rush v. Savchuk, 444 U.S. 320, 332 (1980)). Here, however, the record makes very apparent both Asilis and Cortina were acting on behalf of both Metro and Media Global its wholly owned subsidiary and guarantor of the loan to be refinanced. The judge highlighted those facts in his opinion. Accordingly, we find any failure by the judge to specifically mention Media Global as he was summing up his findings to be of no moment.

We affirm, substantially for the reasons expressed in Judge Kessler's clear and comprehensive opinion from the bench on July 21, 2017.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0300-17T4