762 A.2d 224 (2000)
335 N.J. Super. 174
Satoko MATSUMOTO, Plaintiff-Respondent,
v.
Tatsuya MATSUMOTO and Kazuko Matsumoto, Defendants-Appellants.
Yasunori Matsumoto, Guardian ad litem/Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 26, 2000.
Decided November 22, 2000.
*226 Laurence H. Olive, Montclair, argued the cause for appellant Tatsuya Matsumoto and cross-appellant Yasunori Matsumoto.
Christopher O. Eriksen argued the cause for appellant Kazuko Matsumoto (Post, Polak, Goodsell & MacNeill, attorneys; John N. Post, Roseland, of counsel; Mary H. Post and Mr. Eriksen, on the brief).
Joseph J. Haskins, Jr., Fairview, argued the cause for respondent.
Before Judges STERN, RODRIGUEZ and COLLESTER.
*225 The opinion of the court was delivered by STERN, P.J.A.D.
Defendants, Tatsuya Matsumoto and his mother Kazuko Matsumoto, appeal from an Amended Judgment of Divorce and from a separate order both entered on July 26, 1999. Yasunori Matsumoto, guardian ad litem of Hugo Matsumoto,[1] appeals from a paragraph of the same judgment and from the denial of his motion for reconsideration on October 12, 1999. Defendants challenge portions of the Amended Judgment of July 26, 1999 which include the award to plaintiff, Satoko Matsumoto, as her share of equitable distribution, of the marital home even though it is titled in the name of Kazuko (and the order which appoints plaintiff as a receiver to convey the property) and $944,500 in assets; the award of legal and residential custody of Hugo, the son of plaintiff and Tatsuya, together with child support; the award of damages and punitive damages for both defendants'"intentional interference" with the custody of Hugo, and the award of counsel fees in favor of plaintiff. The guardian appeals from the paragraph of the judgment requiring that the security deposited in lieu of bond be retained by plaintiff, as trustee, for future use in connection with Hugo's counseling.
Kazuko argues that the court did not have in personam jurisdiction; that the default judgment against her should be vacated; that plaintiff's allegations cannot sustain a cause of action against her for tortious interference with custody; that the award of counsel fees against her (in the amount of $38,152.38 jointly and severally with Tatsuya) is unauthorized under the Rules; that the appointment of plaintiff as receiver to sell her premises violates her due process rights, and that the proceedings on remand should be before another judge.
Tatsuya also challenges the default. In addition, he argues that the determination regarding custody and child support, the award of alimony and $750,000 in life insurance benefits for plaintiff, and the award of compensatory and punitive damages for the tortious interference claim are "without foundation" and not supported by the record.
*227 The guardian, Yasunori, Tatsuya's brother, claims that it was an abuse of discretion and violation of due process for the trial judge to order that the cash posted by him in lieu of bond (retained in an account of defendants' counsel (now counsel for Kazuko)) is to be held and used by plaintiff, as trustee, for Hugo's counseling.

I.
It is uncontested before us that on May 2, 1997, defendants were found to be in violation of an April 25, 1997 order requiring them to return Hugo to New Jersey from Japan (where he remained after a family vacation) and ordering the issuance of arrest warrants for defendants; that on October 6, 1997, the trial judge found that it had in personam jurisdiction over Kazuko; [2] that on December 4, 1997 defendants were both indicted for conspiracy to interfere with custody, interference with custody, and endangering the welfare of a child; that on December 23, 1997 arrest warrants were issued for their arrests on the charges when they did not appear for arraignment, and that on April 10, 1998, after plaintiff requested the entry of default against defendants,[3] defendants both certified that they would "acknowledge that the New Jersey courts may exercise personal jurisdiction over [them]," based on acceptance of various conditions including vacation of the civil arrest warrants, issued on May 2, 1997 and continued on July 3, 1997, and dismissal of the indictment and criminal arrest warrants issued thereon. In light of this procedural background, and particularly defendants' fugitive status, we asked at oral argument whether the defendants could seek the relief of this court while remaining fugitives on both the related civil and criminal proceedings. We invited, and received, briefs on that subject.
With the exception of consideration of Kazuko's in personam jurisdiction argument, we decline to consider the appeal by her or Tatsuya. While we could first require her to move for dismissal of the indictment against her or vacation of the warrant in the criminal proceedings on jurisdictional grounds, we consider the in personam jurisdiction claim because we feel that due process requires a finding of jurisdiction before dismissing the appeal on the ground that she remains a fugitive in this matter as well as in the criminal case.

II.
It appears uncontested that "[a]ll of the parties to this lawsuit are Japanese nationals"; plaintiff and Tatsuya lived in New *228 Jersey from 1985 to 1997; Hugo was born here in 1985, and Tatsuya and Hugo have lived in Japan since 1997. Kazuko asserts that because the trial judge found the marital home in Cedar Grove "had been gifted to Tatsuya and [plaintiff,]" she could not be found to be the owner for purposes of jurisdiction, but even if "the Cedar Grove property belongs to [her], ... New Jersey courts still cannot exercise personal jurisdiction over her," and that her "New Jersey property provided no basis for the exercise of in personam jurisdiction on the interference of custody claim."
Kazuko moved for dismissal below, arguing that she lacked sufficient contacts with New Jersey to subject her to in personam jurisdiction. Plaintiff responded, contending that Kazuko had visited New Jersey four or five times and that she had invested in real property here. Plaintiff also emphasized Kazuko's key role in luring Hugo to Japan and preventing his return to New Jersey and in causing plaintiff to be "locked out" of the marital premises and her belongings shipped to Japan.
The trial judge found that Kazuko was served in accordance with the Hague Convention's requirements and that Kazuko's retention of counsel to dispute jurisdiction was itself evidence that Kazuko received actual notice of plaintiff's suit. He found that Kazuko had maintained Hugo in her Tokyo home, preventing contact with plaintiff. The judge reasoned that, under the Uniform Child Custody Jurisdiction Act (UCCJA), New Jersey, as Hugo's home state, properly had jurisdiction to determine his custody. The judge noted that N.J.S.A. 2A:34-32 authorized service upon any party having physical custody of the child and that N.J.S.A. 2A:34-38 required Kazuko's mandatory joinder as one having physical custody of the child or claiming custody or visitation rights.
The judge also rejected Kazuko's contention that the court lacked personal jurisdiction over her. After analyzing the general principles of personal jurisdiction, the judge concluded that a defendant who has committed an intentional tort against a person in a particular jurisdiction could reasonably foresee being sued in that jurisdiction. Because Kazuko was charged with intentional torts against plaintiff designed to cause her harm in New Jersey, Kazuko was found to have sufficient contact with New Jersey to allow its courts to exercise personal jurisdiction over her. Noting that the forum was convenient to plaintiff but inconvenient to defendant, the judge also concluded that the policies of the UCCJA, requiring instances of interference with custody to be adjudicated in the forum in which the harm is suffered, allowed New Jersey's exercise of jurisdiction over Kazuko to "comport with fair play and substantial justice."
There is no real contest to the proposition that New Jersey has jurisdiction to decide issues relating to Hugo's custody. See, e.g., Genoe v. Genoe, 205 N.J.Super. 6, 500 A.2d 3 (App.Div.1985). Nor is there any contest to New Jersey's in rem jurisdiction over the marital premises. The jurisdiction to enter a judgment against Kazuko, particularly with respect to the tort claim, poses a more difficult issue, but we agree with the trial judge's conclusion on the subject.[4]
A court may also exercise jurisdiction over a party who is not physically present in the jurisdiction, if he or she meets a standard of minimum contacts, rendering the maintenance of a suit in that forum within "the traditional notions of fair play and substantial justice." Citibank v. Estate of Simpson, 290 N.J.Super. 519, 526, 676 A.2d 172 (App.Div.1996). To satisfy due process requirements, the forum *229 state's exercise of jurisdiction over the defendant must be reasonable, as measured by a "minimum contacts" analysis, which is the threshold requirement for exercising personal jurisdiction. Hanson v. Denckla, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283, 1296 (1958); International Shoe v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945); Waste Management, Inc. v. Admiral Ins. Co., 138 N.J. 106, 199-20, 649 A.2d 379 (1994), cert. denied, 513 U.S. 1183, 115 S.Ct. 1175, 130 L.Ed.2d 1128 (1995); Lebel v. Everglades Marina, Inc., 115 N.J. 317, 322, 558 A.2d 1252 (1989). To establish minimum contacts, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson, supra, 357 U.S. at 253, 78 S.Ct. at 1240, 2 L.Ed.2d at 1298.
Personal jurisdiction may be specific or general. The measure of the minimal contacts varies depending on which type of jurisdiction is asserted. Lebel, supra, 115 N.J. at 322, 558 A.2d 1252; Halak v. Scovill, 296 N.J.Super. 363, 367-68, 686 A.2d 1245 (App.Div.1997). The court's jurisdiction is "specific" when the cause of action "arises directly out of a defendant's contacts with the forum state." Waste Management, supra, 138 N.J. at 119, 649 A.2d 379; see also Lebel, supra, 115 N.J. at 322, 558 A.2d 1252; Halak, supra, 296 N.J.Super. at 368, 686 A.2d 1245. The court's jurisdiction is "general" if the cause of action "is not related directly to the defendant's contacts with the forum state, but is based instead on the defendant's continuous and systematic activities in the forum." Waste Management, supra, 138 N.J. at 119, 649 A.2d 379; see also Lebel, supra, 115 N.J. at 322-23, 558 A.2d 1252; Halak, supra, 296 N.J.Super. at 367, 686 A.2d 1245. To the extent that plaintiff alleges that Kazuko conspired with Tatsuya to remove Hugo from New Jersey to Japan, to retain Hugo in Japan, and to block communication between plaintiff and Hugo, plaintiff alleges that New Jersey has specific personal jurisdiction over Kazuko regarding interference with Hugo's custody.
Whether the defendant's contacts are sufficient to confer jurisdiction depends on the "relationship among the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683, 698 (1977); Halak, supra, 296 N.J.Super. at 368, 686 A.2d 1245. The contacts must result from the defendant's purposeful conduct and not the unilateral actions of the plaintiff. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98, 100 S.Ct. 559, 567-68, 62 L.Ed.2d 490, 501-02 (1980). "The `purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of `random,' `fortuitous,' or `attenuated' contacts.'" Lebel, supra, 115 N.J. at 323, 558 A.2d 1252. See also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542 (1985); Waste Management, supra, 138 N.J. at 121, 649 A.2d 379; Halak, supra, 296 N.J.Super. at 368, 686 A.2d 1245. Simply put, minimum contacts may exist if the defendant should "reasonably anticipate being haled into court in the forum state" as a result of its activities there. Waste Management, supra, 138 N.J. at 120, 649 A.2d 379; see also Burger King, supra, 471 U.S. at 474, 105 S.Ct. at 2183, 85 L.Ed.2d at 542; World-Wide Volks wagen, supra, 444 U.S. at 297, 100 S.Ct. at 568, 62 L.Ed.2d at 501. Stated differently,
the mere fact that [the] defendant was never physically present in New Jersey does not preclude a finding that minimum contacts existed so long as the defendant's efforts were purposely directed toward a resident of this State and the defendant was aware that the [act] would have direct consequences in New Jersey.
[Halak, supra, 296 N.J.Super. at 368, 686 A.2d 1245 (citing Lebel, supra, 115 N.J. at 327, 558 A.2d 1252).]
*230 Thus "[a]n intentional act calculated to create an actionable event in a forum state will give that state jurisdiction over the actor." Waste Management, supra, 138 N.J. at 126, 649 A.2d 379. "A single isolated act may be sufficient to exercise jurisdiction over a non-resident defendant if the cause of action is related to its contacts with the forum state." Interlotto, Inc. v. National Lottery Admin., 298 N.J.Super. 127, 136, 689 A.2d 148 (App.Div.), certif. denied, 151 N.J. 78, 697 A.2d 549 (1997). Such acts include intentional tortious actions conducted outside the jurisdiction, aimed at a person or entity within the jurisdiction with the knowledge of the potentially devastating impact of the acts. Calder v. Jones, 465 U.S. 783, 789-90, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804, 812 (1984) (jurisdiction in California over Florida newspaper persons for libel in article written and edited in Florida but published in newspaper circulated in California). See also D & D Fuller CATV Construction, Inc. v. Pace, 780 P.2d 520, 524-26 (Colo.1989) (actions of nonresident grandparents in conspiring with ex-husband to remove minor from lawful custody of mother found to be tortious act causing injury in Colorado and falling within long-arm statute); Larson v. Dunn, 460 N.W.2d 39, 43-44 (Minn.1990) (personal jurisdiction could be asserted where grandparents assisted in abduction of grandchild while residing in Minnesota and where tortious conduct continued after moving to California by depriving father of custody); Chiosie v. Chiosie, 104 A.D.2d 962, 480 N.Y.S.2d 756, 757 (App.Div.1984) (tortious acts of co-conspirators in New York to remove children from father's custody were sufficient to establish personal jurisdiction even though appellant was domiciliary of New Jersey and had never entered New York); Fungaroli v. Fungaroli, 51 N.C.App. 363, 367-68, 276 S.E.2d 521, 524 (1981) (trial court's denial of grandfather's motion to dismiss for lack of personal jurisdiction upheld on appeal where presented with competent evidence of participation in removal of child from mother's custody). But see Inselberg v. Inselberg, 56 Cal.App.3d 484, 490-91, 128 Cal.Rptr. 578, 582 (1976) (personal jurisdiction lacking where aunt and uncle enticed niece to leave custody of father through phone calls from Michigan to California because effect of actions was not exceptional and never invoked benefits and protections of state). We, therefore, conclude that the trial court properly held that it had jurisdiction over Kazuko to adjudicate plaintiff's tort claims.

III.
Because the trial court had jurisdiction over both defendants, their refusal to respond to the warrants, return to the State and litigate here prevents our consideration of their respective appeals. See, e.g., Molinaro v. New Jersey, 396 U.S. 365, 366, 90 S.Ct. 498, 498-99, 24 L.Ed.2d 586, 587-88 (1970); State v. Rogers, 90 N.J. 187, 447 A.2d 537 (1982) (criminal appeals) [5]; Kamelia S. v. Derek S., 82 Cal. App.4th 1224, 1229, 98 Cal.Rptr.2d 816 (Ct.App.2d Dist.2000) (appeal dismissed where appellant violated court orders, was in contempt for absconding with child who had been placed in foster care and warrants were issued for his arrest); compare Degen v. United States, 517 U.S. 820, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996), prohibiting entry of summary judgment in favor of government civil forfeiture case when defendant was fugitive in Switzerland notwithstanding outstanding federal indictment, but stating:
If [defendant's] unwillingness to appear in person results in non-compliance with a legitimate order of the court respecting pleading, discovery, the presentation of evidence, or other matters, he will be exposed to the same sanctions as any other uncooperative party. A federal *231 court has at its disposal an array of means to enforce its orders, including dismissal in an appropriate case.

[517 U.S. at 827, 116 S.Ct. at 1782.]
The same is true of the courts of New Jersey, and in these circumstances we believe that defendants should not be able to ask us for relief while refusing to otherwise respond to the lawful orders of our courts. Accordingly, we dismiss the appeals without prejudice to reinstatement upon surrender of the defendants and/or vacation of the warrants now outstanding against them.[6]

IV.
On April 6, 1999, the trial judge denied a request to permit Hugo to appear "on the issue of custody." However, the judge entered the following order without objection:
2. The application of Yasunori Matsumoto to serve the Court as the guardian ad litem of the minor Hyugo Matsumoto is granted under the duties designated solely by the Court.
3. The minor Hyugo Matsumoto shall be interview[e]d in camera by the Court pursuant to N.J.S.A. 9:2-4.
4. The minor Hyugo Matsumoto shall undergo a psychological evaluation to be conducted by Dr. Mildred Milchman, 4 Becker Farm Rd ., Roseland, New Jersey, telephone number XXX-XXX-XXXX.
5. The guardian ad litem, Yasunori Matsumoto, shall contact Dr. Milchman no later than April 7, 1999 to make the appointment for the evaluation of the minor Hyugo Matsumoto with Dr. Milchman.
6. The guardian ad litem shall pay Dr. Milchman's requested fee for her services and report to be rendered to the Court no later than the date of her first appointment with the minor Hyugo Matsumoto.
7. The guardian ad litem, Yasunori Matsumoto, and the minor Hyugo Matsumoto shall remain in New Jersey until completion of the psychological evaluation and Hyugo's interview by the Court and until further order of the Court.
8. The guardian ad litem, Yasunori Matsumoto[,] shall, pursuant to R. 1:13-3, submit a surety bond to the Court in the sum of $100,000.00 as performance security for his duties as guardian ad litem as directed by the Court.
The guardian was ultimately permitted to satisfy the posting requirement "by depositing $100,000 [with the law firm representing defendants] as surety" and the firm was ordered to "deposit the $100,000 in an interest bearing account" with the interest payable to Yasunori.
After the evaluation was conducted, the firm was directed to pay Dr. Milchman "$15,750 from the $100,000 fund deposited by the Guardian ad [l]item," but the final judgment provided that the balance "shall continue to be held by the plaintiff as trustee in an interest bearing account for the benefit of further counseling of the parties' minor child."
At the argument before us, the parties, including plaintiff, appeared to agree that Yasunori, the guardian ad litem, would be entitled to the return of the balance of the cash he posted, if he is discharged as guardian and a new guardian is appointed for any future proceedings. There also appears to be little support for maintaining Yasunori, Tatsuya's brother and Kazuko's son, as guardian ad litem for the child in a dispute in which Tatsuya challenges plaintiff's right to custody and the alleged interference by Tatsuya and Kazuko is at the heart of the litigation.[7]
*232 The posting of a bond by a guardian is designed to assure his or her performance as a fiduciary. It is not the vehicle by which to support the ward or to satisfy the obligation of the parents. See R. 5:8B. Accordingly, when the guardian fulfilled his obligation of having an evaluation conducted and a report submitted to the court, see R. 5:8B(a)(6), and after the entry of final judgment, he was entitled to the return of his security deposit. In any event, we see no basis for the continued appointment of Yasunori, now represented by the same counsel as Tatsuya, to remain as guardian ad litem. He shall be discharged by the trial judge, and a new guardian shall be appointed in the event that future litigation warrants the appointment. The balance of the escrowed funds shall be returned to Yasunori.

V.
We dismiss the appeals of Tatsuya and Kazuko. We reverse on the cross-appeal of Yasunori and order that the escrowed funds be returned to him.
NOTES
[1] Hugo is also spelled Hyugo by defendants and the guardian.
[2] Kazuko entered "an appearance [on June 6, 1997] for the purpose of contesting jurisdiction in this matter." On July 17, 1997 she moved to dismiss plaintiff's amended complaint "as it pertains to [her] for (i) lack of personal jurisdiction pursuant to Rule 4:6-2(b),(ii) failure to state a claim upon which relief can be granted pursuant to Rule 4:6-2(e) and (iii) for insufficiency of service of process pursuant to Rule 4:6-2(d)."
[3] By order of August 7, 1998, "nunc pro tunc to May 14, 1998," the trial judge entered default against Tatsuya and denied an application to set aside a default previously entered orally against Kazuko. In the summer of 1998, Hugo was returned to New Jersey and had a contentious confrontation with his mother. In September 1998, plaintiff obtained an Order to Show Cause to permit Hugo to remain in Japan for the school year while she retained "sole custody," and defendants both filed a "cross-motion" to grant Tatsuya "sole custody ... pendente lite for so long as he continues to attend school in Japan and plaintiff ... continues to reside in the USA." We need not detail the extensive procedural history. Suffice it to say that by order of December 4, 1998, plaintiff retained "sole custody of Hyugo," while various issues, including his attendance of school in Japan, were "reserved for final hearing." However, the order also listed conditions for the vacation of the default and civil arrest warrants, and dismissal of the indictment. Those conditions were not met, and a "default hearing" was scheduled. On April 6, 1999, Yasunori was appointed guardian ad litem for purposes of arranging a psychological evaluation by Dr. Mildred Milchman. The proof hearing resulted in a judgment of divorce and award of "legal and residential custody" to plaintiff, and ultimately in an opinion as to alimony, equitable distribution, attorney's fees and tort claims resulting in the judgment under review.
[4] The parties do not appear to contend that there may be jurisdiction for limited purposes or claims but not others. Moreover, the marital premises is the only identified New Jersey real property presently owned by or in the name of Kazuko. Given the lack of dispute over the in rem jurisdiction, the principal dispute relates to the ability to entertain the tort claim.
[5] See also Ortega-Rodriguez v. United States, 507 U.S. 234, 236-38, 113 S.Ct. 1199, 1201-03, 122 L.Ed.2d 581, 589-90 (1993), in which defendant was a former fugitive when he did not appear for sentencing, but was captured and resentenced before the appeal was filed.
[6] In the interim we lift the stays entered by this court with respect to the distribution of funds related to the sale of the marital premises located in this State.
[7] In light of our disposition, we need not pass upon whether the firm which represents Tatsuya can also represent Yasunori. We note that Tatsuya and Kazuko were jointly represented before the trial court and that Tatsuya was represented on the appeal by counsel for Yasunori.