NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2737-13T4

RAJNIKANT PATEL and
RASIKA PATEL, his wife,

    Plaintiffs-Respondents,

v.

KARNAVATI AMERICA, LLC, CADILA
PHARMACEUTICAL, LTD, SCHNEIDER
ELECTRIC, USA, INC.,

    Defendants,

and

KARNAVATI ENGINEERING, LTD,

    Defendant-Appellant,

and

GLOBEPHARMA, INC.,

    Defendant-Respondent.

_____

> APPROVED FOR PUBLICATION
>
> **October 9, 2014**
>
> **APPELLATE DIVISION**

> Argued September 10, 2014 – Decided October 9, 2014
>
> Before Judges Lihotz, Espinosa and Rothstadt.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-8317-10.
>
> Daniel C. Fleming argued the cause for appellant (Wong Fleming, P.C., attorneys;

Mr. Fleming and Mark W. Thompson, on the brief).

Brian M. Gerstein argued the cause for respondents Rajnikant and Rasika Patel (Harkavy, Goldman, Goldman & Gerstein, attorneys; Mr. Gerstein, on the brief).

Larry E. Hardcastle, II, argued the cause for respondent GlobePharma, Inc. (Lanciano & Associates, LLC, attorneys; Mr. Hardcastle and Michael W. Hoffman, on the brief).

The opinion of the court was delivered by

LIHOTZ, P.J.A.D.

We examine whether the Law Division properly exercised personal jurisdiction over defendant Karnavati Engineering, Ltd. (Karnavati), a corporation located in India.[1] Plaintiff Rajnikant Patel[2] alleged the defective design of a RIMEK UNIK-1 tablet press machine (the machine) manufactured in India by Karnavati caused him to suffer personal injuries while working on the New Jersey premises of his employer, Neil Laboratories/ Advent Pharmaceuticals (Neil Labs). On our leave granted, Karnavati appeals from the Law Division's December 19, 2013 order denying its motion to dismiss plaintiff's complaint for

---

[1] The complaint also named Karnavati's corporate affiliates, Karnavati America, LLC (KAL) and Cadila Pharmaceutical, Ltd. (Cadila) as defendants. The motions of KAL and Cadila to dismiss for lack of personal jurisdiction were granted.

[2] For ease, we refer to Rajnikant Patel as the plaintiff, understanding his wife Rasika Patel has filed a derivative per quod claim.

lack of jurisdiction. R. 4:6-2(b). Karnavati argues the motion judge's finding of minimum contacts is factually flawed leading to an erroneous legal conclusion. We agree and reverse.

The recital of the arduous procedural history detailing plaintiff's efforts to join and serve parties and proceed with his suit is not necessary to our discussion of whether New Jersey has jurisdiction over Karnavati. We limit our discussion to those facts found in the motion record that are relevant to our analysis.

Plaintiff resides in Middlesex County and is employed by Neil Labs, working at its facility in East Windsor. Plaintiff suffered "severe personal injuries" at the facility on November 4, 2008, when a towel he was using to clean the machine while it was running, caught and pulled his left hand into the machine. Plaintiff alleges "[t]he safety interlocks [on the machine] were either bypassed and/or inoperable." Among the claims included in his complaint are: the machine was "defectively designed, manufactured, and/or maintained, causing same to fail"; express and implied warranties were breached; negligence occurred in the "design, manufacture, sale, distribution, inspection, maintenance and/or repair" of the machine; and the failure to warn of the machine's unreasonably dangerous propensities caused injury.

A-2737-13T4

Karnavati moved to dismiss the complaint in lieu of filing an answer. Jurisdictional discovery was conducted.[3]

Mukund Modi, Karnavati's Senior Vice President, filed a certification averring Karnavati, which manufactures tablet press machines used in the pharmaceutical industry, was incorporated and operates in India. Although it manufactured the machine asserted to cause plaintiff's injuries, Karnavati never shipped its machines to New Jersey. In fact, since its incorporation, Karnavati only shipped one product to the United States, when it sent a different device to Maryland, in December 2003. Modi certified Karnavati is not registered to do business in New Jersey; does not advertise in New Jersey; has never engaged in any sales in New Jersey; has never solicited business from or paid taxes to the state; has never attended trade shows or conferences "for the purposes of displaying its tablet press machines, in New Jersey or elsewhere in the United States"; and has never sent its employees to New Jersey for any reason. Additionally, Karnavati never owned, used, or possessed real or personal property in New Jersey; owned or controlled any state bank accounts; or maintained insurance for products liability conduct in the state.

---

[3] Plaintiff never sought or argued additional discovery was necessary.

Karnavati sold the machine in question to GlobePharma, Inc. (Globe) in 2002. Globe is a closely held corporation, with a place of business in New Brunswick. Globe "design[s], manufacture[s], and s[ells] . . . unit-dose samplers for powders used in pharmaceutical and nutritional supplement manufacturing[,]" as well as "new and used pharmaceutical and nutritional supplement machinery such as . . . table-top rotary tablet press machines."

The purchase order for the subject machine was prepared by Globe and sent to Karnavati. Globe sought two machines described as:

> Double Rotary Tablet Press[es], Model KEB—4/35, with 35 stations for IPT, standard B tooling, GMP model with sturdy acrylic guards AC variable speed drive, gravity feed system, manual lubrication system, safety interlocks and the modifications suggested by Neil [Labs], a list of which was already sent to Mr. Nalk.

In the "Terms & Conditions" section of the purchase order, Globe provided:

> A representative from Neil Labs will visit Karnavati for trial running of the machines. A pharmaceutical powder (which will be shipped from Hyderabad to Karnavati) will be run on these machines. Neil Labs may bring their own tooling or they may need tooling from Karnavati. Neil Labs has to be totally satisfied before the machines are accepted. Modifications suggested by Neil Labs are of essence for acceptance of the machines by Neil Labs.

A-2737-13T4

The machine was sent by sea, freight on board, to Globe, which took possession in Mumbai, India. Globe paid for the machine before it left India.

This was not the first time Globe and Karnavati did business. In January 1998, Globe and Karnavati executed an "Exclusive Distribution Agreement," under which Karnavati agreed to exclusively supply Globe with "pharmaceutical machinery, especially tablet presses, packaging machinery, and all-purpose equipment" within the territorial limits of North America, for a period of two years. Karnavati agreed to provide a "full warranty for one year for any manufacturing or material defects towards machines supplied to Globe." Further, the parties agreed "[i]f specifically required by Globe, [Karnavati] shall provide training to the personnel appointed by Globe in installation, operation, and maintenance of the machines" and provided Karnavati's technicians would assist Globe. Globe agreed to use its best efforts to generate a specified level of sales during the two-year agreement term. Globe also assumed responsibility to promote and advertise the machines using brochures of the machines supplied by Karnavati. Finally, the agreement was governed by the laws of India.

Nothing suggests the exclusive distribution agreement continued beyond the initial two-year period. However, Globe's

president certified, in the course of its business, Globe continued to acquire and resell machinery manufactured by Karnavati, although not on an exclusive basis.

Following argument of Karnavati's motion to dismiss, the judge concluded New Jersey courts had jurisdiction because "there [wa]s a sufficient showing here that the tablet press was made for and sold to a New Jersey company, for the purpose of being used in New Jersey." The judge distinguished the facts of this matter from those presented in the United States Supreme Court's recent decision in J. McIntyre Machinery, Limited v. Nicastro, __ U.S. __, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011), reasoning jurisdiction here was not based on Karnavati's "effort to market its goods through the United States." Rather, applying jurisdictional jurisprudence, the judge found the purchase order demonstrated "the sale and the production of [the machine] was for the purpose of benefitting a New Jersey company in New Jersey." Relying on this court's decision in Cruz v. Robinson Engineering Corporation, 253 N.J. Super. 66 (App. Div.), certif. denied, 130 N.J. 9 (1992), the judge reasoned New Jersey courts had personal jurisdiction because Karnavati had "purposely availed itself of this jurisdiction and c[ould] be hailed into court . . . in New Jersey to address a personal

injury complaint" arising from the use of the machine it manufactured and designed for Neil Labs.

On December 6, 2013, an order memorializing these findings was filed.  The motion judge filed an amplification of his determination, pursuant to Rule 2:5-1(b), once leave to appeal was granted.

"The question of in personam jurisdiction is a mixed question of law and fact[.]" Citibank, N.A. v. Estate of Simpson, 290 N.J. Super. 519, 532 (App. Div. 1996).  In our review, we examine whether the trial court's factual findings are "supported by substantial, credible evidence" in the record. Mastondrea v. Occidental Hotels Mgmt. S.A., 391 N.J. Super. 261, 268 (App. Div. 2007).  However, whether these facts support the court's exercise of "personal jurisdiction over a defendant is a question of law," which we review de novo.  YA Global Invs., L.P. v. Cliff, 419 N.J. Super. 1, 8 (App. Div. 2011). Plaintiff bears the burden of pleading sufficient facts to establish jurisdiction.  Blakey, supra, 164 N.J. at 71; Jacobs v. Walt Disney World, Co., 309 N.J. Super. 443, 454 (App. Div. 1998).

"[T]erritorial presence in the forum is the basic prerequisite for subjecting a defendant to its in personam judgment."  Estate of Simpson, supra, 290 N.J. Super. at 526. The Fourteenth Amendment's Due Process Clause "'protect[s] a

person against having the Government impose burdens upon him except in accordance with the valid laws of the land.'" Nicastro, supra, __ U.S. at __, 131 S. Ct. at 2786, 180 L. Ed. 2d at 773 (plurality op.) (quoting Giaccio v. Pennsylvania, 382 U.S. 399, 403, 86 S. Ct. 518, 521, 15 L. Ed. 2d 447, 450 (1966)). "[T]hose who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." Id. at __, 131 S. Ct. at 2787, 180 L. Ed. 2d at 774.

Absent actual territorial presence, jurisdiction may extend to out-of-state parties that engage in sufficient contacts with the forum, as long as those contacts satisfy the protections of the Due Process Clause of the Fourteenth Amendment. New Jersey's long-arm jurisprudence allows "out-of-state service to the uttermost limits permitted by the United States Constitution." Avdel Corp. v. Mecure, 58 N.J. 264, 268 (1971). See also Reliance Nat'l Ins. Co. in Liquidation v. Dana Transp., Inc., 376 N.J. Super. 537, 543 (App. Div. 2005) (noting New Jersey courts exercise in personam jurisdiction "to the outermost limit of [their] ability to do so"); Pressler & Verniero, Current N.J. Court Rules, comment 3.1.1 on R. 4:4-4 (2014). Specifically, the contacts with the forum must be such that "'the maintenance of the suit does not offend traditional

notions of fair play and substantial justice.'" <u>Waste Mgmt.,</u>
<u>Inc. v. Admiral Ins. Co.</u>, 138 <u>N.J.</u> 106, 132 (1994) (O'Hern, J.,
concurring) (quoting <u>Int'l Shoe Co. v. Washington</u>, 326 <u>U.S.</u> 310,
316, 66 <u>S. Ct.</u> 154, 158, 90 <u>L. Ed.</u> 95, 102 (1945)), <u>cert. denied</u>
<u>sub nom.</u>, <u>WMX Techs. v. Canadian Gen. Ins. Co.</u>, 513 <u>U.S.</u> 1183,
115 <u>S. Ct.</u> 1175, 130 <u>L. Ed.</u> 2d 1128 (1995). <u>See also</u> <u>R.</u> 4:4-
4(b)(1) (providing methods of serving and obtaining in personam
jurisdiction over out-of-state defendants "consistent with due
process of law").

Any jurisdictional analysis must begin with "an examination
of the defendant's minimum contacts with the state[.]" <u>Baanyan</u>
<u>Software Servs., Inc. v. Kuncha</u>, 433 <u>N.J. Super.</u> 466, 476 (App.
Div. 2013). The analysis is fact sensitive and must be
undertaken "on a case-by-case basis." <u>Blakey v. Cont'l</u>
<u>Airlines</u>, 164 <u>N.J.</u> 38, 66 (2000).

> It is also well settled that the requisite
> quality and quantum of contacts is dependent
> on whether general or specific jurisdiction
> is asserted, that is, whether the defendant
> is subject to any claim that may be brought
> against him in the forum state whether or
> not related to or arising out of the
> contacts themselves, i.e., general
> jurisdiction, or whether the claim is
> related to or arises out of the contacts in
> the forum, i.e., specific jurisdiction.
>
> [<u>Estate of Simpson</u>, <u>supra</u>, 290 <u>N.J. Super.</u>
> at 526-27.]

To establish general jurisdiction, "[a] defendant must have contacts with th[e] State that are 'so continuous and substantial as to justify subjecting the defendant to the jurisdiction.'" Baanyan, supra, 433 N.J. Super. at 474 (quoting Waste Mgmt., supra, 138 N.J. at 123). "[This] standard for establishing general jurisdiction is fairly high, and requires that the defendant's contacts be of the sort that approximate physical presence." Wilson v. Paradise Village Beach Resort & Spa, 395 N.J. Super. 520, 528 (App. Div. 2007) (internal quotation marks omitted). On the other hand, "[s]pecific jurisdiction is available when the 'cause of action arises directly out of a defendant's contact with the forum state.'" Baanyan, supra, 433 N.J. Super. at 474 (quoting Waste Mgmt., supra, 138 N.J. at 119). "In the context of specific jurisdiction, the minimum contacts inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.'" Lebel v. Everglades Marina, Inc., 115 N.J. 317, 323 (1989) (quoting Shaffer v. Heitner, 433 U.S. 186, 204, 97 S. Ct. 2569, 2579, 45 L. Ed. 2d 683, 698 (1977)). "[W]hen the defendant is not present in the forum state, it is essential that there be some act by which the defendant purposefully avails [itself] of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its

A-2737-13T4

laws." Baanyan, supra, 433 N.J. Super. at 475 (internal quotation marks omitted).

Here, no one disputes Karnavati's contacts with New Jersey are not sufficiently continuous or substantial to warrant an exercise of general jurisdiction. The motion judge concluded the facts do support application of specific jurisdiction. Thus, the ultimate question is whether Karnavati submitted to the judicial power of New Jersey in connection with its activities directed at the State, justifying specific jurisdiction "'in a suit arising out of or related to the defendant's contacts with the forum.'" Nicastro, supra, __ U.S. at __, 131 S. Ct. at 2788, 180 L. Ed. 2d at 775 (plurality op.) (quoting Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 414 n. 8, 104 S. Ct. 1868, 1872 n. 8, 80 L. Ed. 2d 404, 411 n. 8 (1984)). See also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528, 542 (1985) (emphasizing the critical inquiry is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there"); Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283, 1298 (1958) (holding generally the exercise of judicial power is not lawful unless the defendant "purposefully avails itself of the privilege of conducting

activities within the forum State, thus invoking the benefits and protections of its laws").

Defendant argues "there is absolutely no evidence that [Karnavati] ever purposely availed itself of the right to do business in New Jersey[.]" It maintains the holding in Nicastro defeats plaintiff's claims of specific jurisdiction. The essence of defendant's position, which is repeated before us, is the single sale of a product to an independent corporation in India, even if accompanied by the knowledge the product will be delivered to a user in New Jersey, is insufficient to allow the application of long-arm jurisdiction. The trial judge rejected consideration of Nicastro, finding it factually distinguishable from this matter.

In Nicastro, a British manufacturer sold its machines to an independent distributor in the United States, and had no contacts with New Jersey, where the plaintiff was injured while using one of the machines sold in the United States. Nicastro, supra, __ U.S. at __, 131 S. Ct. at 2785-86, 180 L. Ed. 2d at 772-73 (plurality op.). Justice Kennedy, joined by Chief Justice Roberts and Justices Scalia and Thomas, delivered the opinion of the court; Justice Breyer filed a concurring opinion joined by Justice Alito; and Justice Ginsburg, joined by Justices Sotomayor and Kagan, dissented.

13

The majority opinion stemmed the apparent extension of jurisdiction over foreign defendants under what had become known as "the stream of commerce theory," which was first announced in World-Wide Volkswagen Corporation v. Woodson, 444 U.S. 286, 297-98, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490, 502 (1980) ("[A] forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."). See also Charles Gendler & Co. v. Telecom Equip. Corp., 102 N.J. 460 (1986) (adopting stream of commerce theory when considering extra-territorial jurisdiction). Justice Kennedy specifically examined the holding of the New Jersey Supreme Court, which concluded "a foreign manufacturer that places a defective product in the stream of commerce through a distribution scheme that targets a national market, which includes New Jersey, may be subject to the personal jurisdiction of a New Jersey court in a product-liability action." Nicastro v. McIntyre Mach. Am., Ltd., 201 N.J. 48, 73 (2010). The majority of the Court reversed the New Jersey Supreme Court's holding, rejecting its expansion of the stream of commerce theory to the point where "a producer is subject to jurisdiction for a products-liability action so long as it

14                                                              A-2737-13T4

'knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states.'" Nicastro, supra, __ U.S. at __, 131 S. Ct. at 2793, 180 L. Ed. 2d at 780 (plurality op.) (quoting Nicastro, supra, 201 N.J. at 76-77).

In setting aside jurisdiction based on what equated to a defendant's knowledge of foreseeable consequences because such a basis offended the traditional notions of fair play and substantial justice requirements of due process, the majority of the justices re-focused review on whether long-arm jurisdiction applies, examining "whether the defendant's activities manifest an intention to submit to the power of a sovereign. In other words, the defendant must 'purposefully avai[l] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws[.]'" Id. at __, 131 S. Ct. at 2788, 180 L. Ed. 2d at 775 (quoting Hanson, supra, 357 U.S. at 253, 78 S. Ct. at 1240, 2 L. Ed. 2d at 1298). "The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." Ibid. Further, Justice Kennedy flatly rejected

the New Jersey Supreme Court's reliance on public policy concerns, including a state's "'strong interest in protecting its citizens from defective products,'" explaining: "[t]hat interest is doubtless strong, but the Constitution commands restraint before discarding liberty in the name of expediency." Id. at __, 131 S. Ct. at 2791, 180 L. Ed. 2d at 778 (quoting Nicastro, supra, 201 N.J. at 75).

Justice Breyer agreed the New Jersey Supreme Court's opinion must be reversed, but wrote separately, providing precedential support to avoid what he viewed as the inclusion of unnecessarily "broad pronouncements that refashion basic jurisdictional rules." Id. at __, 131 S. Ct. at 2793, 180 L. Ed. 2d at 780 (Breyer, J., concurring). In concluding personal jurisdiction was not supported, he explained:

> None of our precedents finds that a single isolated sale, even if accompanied by the kind of sales effort indicated here, is sufficient. Rather, this Court's previous holdings suggest the contrary. The Court has held that a single sale to a customer who takes an accident-causing product to a different State (where the accident takes place) is not a sufficient basis for asserting jurisdiction. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). And the Court, in separate opinions, has strongly suggested that a single sale of a product in a State does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant, even if that defendant places his goods in the stream of

commerce, fully aware (and hoping) that such a sale will take place. See Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty., 480 U.S. 102, 111, 112, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) (opinion of O'Connor, J.) (requiring "something more" than simply placing "a product into the stream of commerce," even if defendant is "awar[e]" that the stream "may or will sweep the product into the forum State"); id., at 117, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (Brennan, J., concurring in part and concurring in judgment) (jurisdiction should lie where a sale in a State is part of "the regular and anticipated flow" of commerce into the State, but not where that sale is only an "edd[y]," i.e., an isolated occurrence); id., at 122, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (Stevens, J., concurring in part and concurring in judgment) (indicating that "the volume, the value, and the hazardous character" of a good may affect the jurisdictional inquiry and emphasizing Asahi's "regular course of dealing").

[Nicastro, supra, __ U.S. at __, 131 S. Ct. at 2792, 180 L. Ed. 2d at 779 (Breyer, J., concurring).]

In this matter, plaintiff and Globe challenge Karnavati's position that it is not subject to suit in New Jersey, and advance the correctness of the motion judge's conclusion in favor of New Jersey's exercise of personal jurisdiction. Factual support for the Law Division's conclusion is garnered from the 1998 distribution agreement between Karnavati and Globe, which is suggested to establish Karnavati's knowledge its products would be sold in New Jersey; the subject machine was sold pursuant to the distribution agreement; and the machine was

17

custom-made specifically for and sold to Neil Labs, a New Jersey company, for use in New Jersey, evidencing Karnavati's intent to benefit an entity in the State. Regarding this last point, the judge's opinion noted: the purchase order expresses the machines must be tailored to Neil Labs' specifications and must include "safety interlocks and . . . modifications suggested by Neil [Labs]"; "[m]odifications suggested by Neil Labs" were "of essence" for its acceptance of the machines; and Neil Labs could "send a representative to Karnavati for a trial run to ensure operation."

Additionally, plaintiff and Globe reiterate the applicability of our analysis in Cruz, which the trial judge found persuasive. Cruz involved a products liability claim by a New Jersey plaintiff injured on the New Jersey industrial premises of his employer while using a heavy-duty urn filter press manufactured by the California defendant. Cruz, supra, 253 N.J. Super. at 68. This court found no need to consider the stream of commerce theory when analyzing the jurisdictional challenge. Rather, we found adequate, undisputed facts proving the defendant manufacturer had engaged in "purposeful conduct" with New Jersey, warranting the exercise of specific jurisdiction. Id. at 73. Assessing the defendant's contacts, we noted the machine at issue was "a major industrial piece of

equipment," described as the "cornerstone" of the employer's "entire industrial operation, custom-ordered, custom produced and taking over a year to fabricate." Ibid. The facts clearly demonstrated the defendant manufacturer "certainly understood . . . that the subject of the agreement was not only to be shipped to New Jersey but was, moreover, the sine qua non of [the employer's] plant, the predicate of the whole New Jersey operation." Ibid.

Although Cruz involved a single direct sale to New Jersey, the imposition of jurisdiction was based on the facts that demonstrate significant, repeated interactions occurred over the course of one year between the New Jersey employer which purchased the machine and the foreign manufacturer. Id. at 74. Letters, phone calls and personal meetings took place as the parties worked together to customize and deliver the machine. Id. at 74. Again, both parties knew the New Jersey employer had no business without the machine. Id. at 75. The totality of these numerous contacts were found to satisfy due process allowing New Jersey's exercise of jurisdiction over the nonresident manufacturer, a decision that did "'not offend traditional notions of fair play and substantial justice.'" Nicastro, supra, __ U.S. at __, 131 S. Ct. at 2787, 180 L. Ed.

A-2737-13T4

2d at 774 (plurality op.) (quoting Int'l Shoe, supra, 326 U.S. at 316, 66 S. Ct. at 158, 90 L. Ed. at 102).

We cannot agree the facts in this matter square with those in Cruz. This transaction, between Karnavati and Globe, took place through Karnavati's office in India. The record does not reflect the level of interaction between Karnavati and Neil Labs in New Jersey, distinguishing these facts from the significant contacts shown between the manufacturer and buyer in Cruz. In Cruz, the contacts between the manufacturer and the forum included a series of deliberate interactions over an extended period, to ensure the machine, which was essential to the buyer's operations, complied with the buyer's required specifications for use in New Jersey. Here, there is no information supporting a finding of a course of interaction between Neil Labs and Karnavati in negotiating this sale, or showing the parties worked together to customize the machine for use in New Jersey.

Further, unlike in Cruz, the record does not support a finding the machine was either unique or pivotal to Neil Labs' New Jersey operations. The purchase order drawn up by Globe allows Neil Labs the right to inspect the machine prior to its delivery; however, we are not told whether this occurred, and, if inspection in fact took place, the record is silent as to the

time and place, and whether the inspection was conducted by Globe or Karnavati.

Contrary to the motion judge's finding, Karnavati's sale to Globe was not pursuant to their exclusive distribution agreement, because that agreement had expired two years earlier. We also reject the trial judge's determination that Karnavati merely used Globe as an intermediary to ship the machine. In fact, Neil Labs was Globe's customer and it was Globe which ordered the machine. There is no legal relationship between Karnavati and Globe; they are separate and distinct entities, independently conducting their respective businesses. Thus, we are left with only the purchase order, which the motion judge concluded supplied Karnavati's contacts with the forum, placing it on notice it would be subject to suit in New Jersey. We disagree.

First, we reject the contention that Karnavati's fulfillment of Globe's purchase order in India, which referenced Globe's intended resale to a New Jersey resident, suggested the regularity in manner and magnitude of sales to a distributor or retailer in a forum state requisite to the exercise of jurisdiction by the forum under a post-Nicastro stream of commerce theory. The facts presented speak generally of other national sales, and offer no evidence of Karnavati's marketing

or promotional efforts. There is no showing Karnavati directed marketing efforts or sales to New Jersey; evinced an intent or purpose to serve the forum by designing the machine for the New Jersey market; or established lines of communication, such as a website, to provide service or advice to New Jersey actual or potential customers. The facts in this record fail to support a finding Karnavati engaged in sales efforts "to serve, directly or indirectly, the market for its product in other States," as was found in World-Wide Volkswagen, supra, 444 U.S. at 297, 100 S. Ct. at 567, 62 L. Ed. 2d at 501-02. See also Nicastro, supra, __ U.S. at __, 131 S. Ct. at 2792, 180 L. Ed. 2d at 779 (Breyer, J., concurring) (finding stream of commerce inapplicable when no "'regular . . . flow' or 'regular course' of sales'" is shown); Asahi, supra, 480 U.S. at 117, 107 S. Ct. at 1035, 94 L. Ed. 2d at 107 (Brennan, J., concurring) ("[S]tream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale.").

Second, the facts do not demonstrate the nonresident Karnavati purposefully availed itself of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson, supra, 357 U.S. at 253, 78 S. Ct. at 1240, 2 L. Ed. 2d at 1298. As noted above,

22

the record lacks proof of Karnavati's course of dealing with the forum generally or with Neil Labs specifically, with respect to effectuating the sale of the machine. Neither plaintiff nor Globe discuss the extent of contacts specific to this machine, facts found essential to this court's finding in Cruz. Other than pointing to the language in the purchase order, Globe and plaintiff fail to identify specific actions by Karnavati which demonstrate its desire to conduct business in New Jersey. Plaintiff and Globe do not reveal whether Karnavati altered its standard machine in preparing the order at issue; whether Karnavati's employees offered Neil Labs training or expertise; or whether Neil Labs called Karnavati at any time with regard to the machine order.

In extending jurisdiction based upon purposeful availment, we measure a nonresident defendant's purposeful conduct connecting it to the forum, not "the unilateral activity of another who merely claims a relationship to the defendant[.]" Charles Gendler, supra, 102 N.J. at 471 (quoting Hanson, supra, 357 U.S. at 253, 78 S. Ct. at 1240, 2 L. Ed. 2d at 1298). See also Waste Mgmt., supra, 138 N.J. at 121. Simply stated, the issue is notice: "[t]he defendant's contacts with the forum state must be such that it 'should reasonably anticipate being haled into court there.'" Charles Gendler, supra, 102 N.J. at

470 (quoting <u>World-Wide Volkswagen</u>, <u>supra</u>, 444 <u>U.S.</u> at 297, 100 <u>S. Ct.</u> at 567, 62 <u>L. Ed.</u> 2d at 501).

Here, we are presented only with Globe's purchase order, which noted its sale to Neil Labs. We would be hard-pressed to conclude Karnavati's sale of a machine to Globe in India, for Globe's resale to Neil Labs in New Jersey shows Karnavati's purposeful availment of business opportunities that support the exercise of personal jurisdiction in New Jersey. More is needed. The trial court's determination that the necessary jurisdictional contacts were satisfactorily shown on these limited facts alone was erroneous.

Globe also maintains the effects of the expired distribution agreement evince Karnavati's contacts with the State, and such past contacts support personal jurisdiction. Certainly, Globe's prior relationship gave it familiarity with Karnavati's products. However, as Justice Kennedy explained in <u>Nicastro</u>, when a defendant manufacturer's conduct consists of mere "sales efforts" to sell its machines in the United States through a distributor, but does not target the New Jersey market in particular, jurisdiction in the specific State forum does not lie. <u>Nicastro</u>, __ <u>U.S.</u> at __, 131 <u>S. Ct.</u> at 2786, 180 <u>L. Ed.</u> 2d at 773 (plurality op.). Absent additional evidential support activities within the forum, Globe's theory is unpersuasive.

As noted above, plaintiff bears the burden of pleading sufficient facts to establish jurisdiction. Following our review of this record, we conclude he has failed to do so. The record is insufficient to support the conclusion Karnavati's conduct surrounding the sale of the tablet press machine involved in plaintiff's injuries constituted "purposeful acts" for which Karnavati would be on notice that it would be subject to suit in New Jersey. <u>Accura Zeisel Mach. Corp. v. Timco, Inc.</u>, 305 <u>N.J. Super.</u> 559, 566 (App. Div. 1997).

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

25                                        A-2737-13T4