NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4691-15T4

IN THE MATTER OF THE
ESTATE OF DOLORES M. PIERCE,
DECEASED.

 Argued August 30, 2017 – Decided September 22, 2017

 Before Judges Alvarez and Gooden Brown.

 On appeal from the Superior Court of New
 Jersey, Chancery Division, Probate Part,
 Monmouth County, Docket No. P-0391-15.

 Richard A. Ragsdale argued the cause for
 appellant Michael A. Pierce (Davidson, Sochor,
 Ragsdale & Cohen, LLC, attorneys; Mr.
 Ragsdale, of counsel and on the briefs).

 Barbara L. Birdsall argued the cause for
 respondent Marilyn Cromwell (Birdsall &
 Laughlin, LLC, attorneys; Ms. Birdsall, of
 counsel and on the brief).

PER CURIAM

 Dolores M. Pierce died December 9, 2014. Her son, Michael

A. Pierce was named executor in his late mother's Will. Pierce's

sister Marilyn Cromwell, a South Carolina resident, initially and

unsuccessfully objected to the appointment. A third sibling is
not a party to the litigation. Pierce's letters testamentary

issued on May 20, 2015.

 On March 29, 2016, Cromwell applied for relief a second time

and successfully removed Pierce. John G. Hoyle III, Esquire, was

named the substitute Administrator Cum Testamento Annexo

(Administrator CTA). We now reverse, finding that the statutory

standard for removal was not met, and reinstate Pierce.1

 Decedent's assets appeared to include three parcels of real

estate: a 122-acre farm that Pierce had worked on for over forty

years (the farm), a single-family dwelling that had an underground

storage tank (the Pine Tree property), and a parcel where Pierce

lived and maintained his business (the Ramshorn property). A

fourth parcel of unimproved real estate had been deeded to Pierce

and his wife prior to decedent's death. For reasons not disclosed

on the record, the deed was not recorded until the day after

decedent's death. Cromwell initially included the fourth parcel

as part of decedent's assets, but the court excluded the parcel

in its January 29, 2016 decision. The decedent's February 4, 2010

will instructed that the real estate "be sold as soon as

practicable."

1
 We were told at oral argument the real estate was sold. Cromwell
could have filed a motion to dismiss the appeal on that basis, or
Pierce could have dismissed the appeal. Neither step was taken,
so we must assume the issues raised in the appeal are not moot.

 2 A-4691-15T4
 On November 16, 2015, Cromwell filed her first verified

complaint seeking Pierce's removal. She alleged that Pierce had

not fulfilled his statutory obligations because he failed to pay

any New Jersey Estate Tax, exposing the estate to interest and

penalties; did not sell decedent's real property; did not properly

inventory, appraise or distribute decedent's personal property;

and refused to allow Cromwell access to decedent's real and

personal property.

 Pierce submitted a thirteen-page certification with eleven

exhibits in opposition to the complaint, responding that estate

taxes had not been paid because the estate had no cash assets. He

had obtained appraisals, but admitted that no inventory had been

provided to Cromwell, because none was yet necessary. Along with

the exhibits, the certification outlined Pierce's efforts to

obtain appraisals of the farm and the Pine Tree properties. The

certification also highlighted Pierce's efforts in managing the

properties, knowing they were assets which needed to be sold.

 According to the certification, during the appraisal process,

an underground tank was discovered on the Pine Tree property.

Nonetheless, Pierce located a buyer willing to pay a $250,000

purchase price. Pierce also stated he wished to buy the Ramshorn

property, which was in foreclosure by the time Pierce was appointed

executor. He loaned the estate over $20,000 to pay real estate

 3 A-4691-15T4
taxes. Pierce supplied an October 6, 2015 letter from a realtor

declining to list the farm property because it included significant

wetlands.

 Pierce also certified that he had loaned a total of $49,430.45

to the estate in the months he had served as an executor. By

August 18, 2015, he had obtained an appraisal of decedent's jewelry

and offered to ship to Cromwell decedent's furniture, china,

clothing, costume jewelry, and other items of personal property.

On January 29, 2016, Pierce's attorney represented to the court

that the contract to sell the Pine Tree property for $250,000 had

been signed the previous week, and that Pierce would obtain an

appraisal for the Ramshorn property within the next few weeks as

he wished to purchase it.

 In her decision dismissing Cromwell's first complaint, the

judge stated Pierce knew the real properties had to be sold, but

had "been sitting around for a year." She "[didn't] buy that

argument" that Pierce had needed time to get appraisals. She

ordered him to promptly sell the real property, even though she

denied Cromwell's request to remove Pierce. The judge observed

that, pursuant to the statute, it was "difficult" to demonstrate

"clear and definite proof of fraud, gross carelessness, or

indifference." She found that Pierce had acted in good faith, but

was "hanging on by a thread[.]"

 4 A-4691-15T4
 The judge directed Pierce to provide Cromwell with the Pine

Tree property sales agreement. The order also stated: "If the

sale does not close by March 1, 2016, [Pierce] shall within ten

(10) days sign a multiple listing agreement" and "notify [Cromwell]

of all sales activity and offers to purchase the property no less

frequently than every thirty (30) days after entering the multiple

listing agreement." Additionally, Pierce was required to sign a

multiple listing agreement for the farm property within ten days

at "a price which may be higher than but shall not be less than

the appraised value reported by Gagliano Appraisal[.]"

 Finally, Pierce was ordered to obtain an appraisal of the

farm property within twenty days. Excepting his home, Pierce was

to allow Cromwell access to the interior and exterior of all of

decedent's real estate within ten days. The judge dismissed the

count within the complaint seeking to void decedent's transfer of

the fourth parcel to Pierce and his wife.

 By letter dated February 26, 2016, Pierce's attorney on behalf

of the buyer asked Cromwell's attorney for a one-week extension

of the March 1, 2016 closing date for the Pine Tree property. He

attached the buyer's email request to his letter. The underground

storage tank had to be removed prior to closing, and the delay

would ensure the removal would be complete before title was

 5 A-4691-15T4
transferred. Cromwell's attorney refused to consent.

Accordingly, the closing took place on March 2, 2016.

 On that same day, Cromwell filed a notice of motion for

reconsideration of the February 12, 2016 order that dismissed her

first complaint to remove Pierce. She again sought his removal

and submitted a certification from her attorney regarding the

delay of the Pine Tree property closing date. The attorney

certified that "[a]s of this date, there has been no communication

from [Pierce] as to the status of the sale of [the Pine Tree

property]."

 In opposition, Pierce filed a letter brief explaining that

the Pine Tree closing had occurred on March 2, and otherwise

describing his efforts to comply with the order. Cromwell had

never contacted Pierce to arrange a time to inspect the real

estate. Pierce's response also included an itemization of

decedent's personal property, copies of which had been previously

sent to Cromwell's attorney. The letter brief related a

conversation in which Cromwell's attorney was informed that the

decedent's personal property had been moved to a storage facility

in Clifton.

 A copy of an agreement listing the farm for sale at $2.8

million was provided, and Pierce attached correspondence to that

document explaining that the asking price had been suggested by

 6 A-4691-15T4
the realtor, despite an earlier appraisal assessing the property

at only $830,000.

 Cromwell in turn disputed the jewelry appraisal provided by

Pierce, stating that Pierce had years prior given her an appraisal

establishing a higher value. She also claimed that several items

were missing. Cromwell did not attach a copy of the earlier

appraisal.

 At the March 24, 2016 hearing on Cromwell's application for

reconsideration, Cromwell contended that the January 2016 hearing

was necessitated by Pierce's failure to act to settle the estate.

She further argued that the $2.8 million listing was effectively

"a decision not to sell the property" since it was significantly

higher than the appraised value.

 Pierce reiterated that the broker suggested the asking price,

but that it would be relisted at the lower price if ordered by the

court. The judge refused Pierce's request that he be allowed to

testify regarding the circumstances of the listing price of the

farm property. Cromwell agreed that if the personal property

Pierce provided on a list were confirmed upon inspection, then

they would be "done with that."

 At the outset of the hearing, the judge said that she was

"very, very disconcerted" by the repeated filing of Cromwell's

application, but she was not sure if Pierce had violated his

 7 A-4691-15T4
statutory obligations. There was "tremendous animosity" between

the parties, but animosity alone is "not really a reason to remove

an executor[.]" Nevertheless, the judge ultimately found that

Pierce "neglected and refused to perform or obey [the order of]

judgment within the times fixed by the [c]ourt." The judge

considered Pierce's listing of the farm property for three times

the original appraised value to establish that he did not "really

want to sell it."

 The judge opined that Pierce should have been aware of the

underground tank problem that delayed the Pine Tree property

closing, acknowledging that it was not delayed "much."

Furthermore, the judge considered Pierce's relocation of personal

items to a new facility to mean he was not "cooperating." The

court granted Cromwell's application and appointed a substitute

Administrator CTA. She further ordered Pierce to submit a formal

accounting within sixty days.

 On May 2, 2016, Pierce filed a notice of motion for

reconsideration along with a certification detailing his efforts

to list the farm property and the reason he had disagreed with the

$830,000 appraisal price. He noted that he had thirty-six years

of consulting experience as a licensed professional engineer,

licensed architect, and licensed professional planner. Among

 8 A-4691-15T4
Pierce's supporting documents was a certification from the

appraiser explaining his valuation.

 Pierce further certified that he had been making payments

from his personal funds towards the loan against the property,

preventing a foreclosure. The personal property had been moved

into a storage facility in Clifton because his wife did not want

Cromwell to come to her place of business in order to examine it.

 During the reconsideration hearing on May 20, 2016, Pierce

contended it was improper to remove an executor without a plenary

hearing. Among other things, he argued that if the court intended

to proceed summarily, it should have treated Cromwell's

application as one for summary judgment. Since the Pine Tree

property had been sold on March 2, Pierce argued that he was for

all intents and purposes in compliance with the judge's original

order. Cromwell responded that no hearing was necessary regarding

the removal because Pierce had not disputed material facts and

only submitted a brief in opposition to the application.

 The court denied the motion for reconsideration, stating that

it "had entered another order that [the] Pine Tree property was

to be sold by a certain date, and it really wasn't sold by that

date." She found fault with Pierce's decision to move the personal

property to Clifton, knowing that Cromwell lived in South Carolina.

The judge reiterated her concern that Pierce listed the farm

 9 A-4691-15T4
property for three times the appraisal price and, therefore,

affirmed her earlier decision. She refused to stay the order

pending appeal.

 We owe no deference to the trial court's interpretation of

the law, or the legal consequences that flow from established

facts. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140

N.J. 366, 378 (1995). As to mixed questions of law and fact, we

give deference to factual findings of the trial court, but review

de novo the court's application of legal rules to such factual

findings. Patel v. Karnavati Am., LLC, 437 N.J. Super. 415, 423

(App. Div. 2014). Ordinarily, we do not disturb factual findings

"unless we are convinced that they are so manifestly unsupported

by or inconsistent with the competent, relevant and reasonably

credible evidence as to offend the interest of justice." Rova

Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974)

(citing Fagliarone v. Twp. of No. Bergen, 78 N.J. Super. 154, 155

(App. Div. 1961)). Our review of factual findings is deferential

because only the trial judge has the opportunity to observe the

demeanor of witnesses. N.J. Div. of Youth & Family Serv's. v.

G.M., 198 N.J. 382, 396 (2009). But where the judge's fact finding

results from a review of allegations untested by cross-

examination, review will not be deferential. Ibid.

 10 A-4691-15T4
 "Moreover, it has long been the practice in reviewing chancery

decrees for appellate courts 'to make an independent investigation

of the facts.'" In re Estate of Mosery, 349 N.J. Super. 515, 522

(App. Div. 2002)(citations omitted) certif. denied, 174 N.J. 191

(2002). That same standard of review applies to an order removing

an executor or administrator. See In re Breckwoldt, 22 N.J. 271

(1956) (independently examining the record in an appeal of an

order removing an executor).

 A fiduciary, acting as executor, has broad statutory powers

to administer the estate "in the exercise of good faith and

reasonable discretion[.]" N.J.S.A. 3B:14-23. With regard to real

property, a fiduciary is empowered to take possession, pay taxes

and other charges, sell, lease, mortgage, or grant easements. See

N.J.S.A. 3B:14-23(e). In our view, Pierce's conduct did not fall

outside of the obligations imposed by the statute.

 A fiduciary may be removed for cause, pursuant to N.J.S.A.

3B:14-21, when:

 a. After due notice of an order or
 judgment of the court so directing, neglects
 or refuses, within the time fixed by the
 court, to file an inventory, render an
 account, or give security or additional
 security;

 b. After due notice of any other order
 or judgment of the court made under its proper
 authority, neglects or refuses to perform or

 11 A-4691-15T4
 obey the order or judgment within the time
 fixed by the court;

 c. Embezzles, wastes, or misapplies any
 part of the estate for which the fiduciary is
 responsible, or abuses the trust and
 confidence reposed in the fiduciary;

 d. No longer resides nor has an office
 in the State and neglects or refuses to
 proceed with the administration of the estate
 and perform the duties required;

 e. Is incapacitated for the transaction
 of business; or

 f. Neglects or refuses, as one of two or
 more fiduciaries, to perform the required
 duties or to join with the other fiduciary or
 fiduciaries in the administration of the
 estate for which they are responsible whereby
 the proper administration and settlement of
 the estate is or may be hindered or prevented.

 Almost all of the evidence attached to Cromwell's motions for

reconsideration and in aid of litigant's rights pertained to the

Pine Tree property, which was sold by the time of Pierce's removal.

The only new information and ground provided by Cromwell as a

possible basis for removal in her second application was the

sentence in the March 2, 2016 certification from her attorney that

she had "no communication" from Pierce as to the status of the

sale of the Pine Tree property. However, on February 26, 2016,

Pierce's attorney asked Cromwell's counsel for a one-week

extension for the closing at the buyer's request. Counsel refused

the request the same day she filed her second application.

 12 A-4691-15T4
Moreover, no part of the certification from Cromwell's counsel or

any other evidence, for that matter, alleged facts that

demonstrated an actual violation of the court's February 12, 2016

order.

 The judge's order did not require Pierce to sell the Pine

Tree property by March 1. Even if it had imposed that obligation,

the delay was initiated by the buyer and inconsequential.

 Cromwell did not dispute the fact that she never attempted

to arrange a time for viewing any property, real or personal,

regardless of location. Pierce's removal was unwarranted on that

basis.

 It is not at all clear that Pierce's decision to list the

farm property at three times the appraised value, at the realtor's

suggestion, was a violation of the judge's order. He listed the

property as the order required, albeit at a different price than

the appraisal. If the issue for the court was the amount of the

listing price, as opposed to compliance with the obligation to

publicly offer the property for sale, Pierce should have been

extended the opportunity to explain his decision.

 The judge misapprehended Pierce's conduct, which on this

record, did not appear to violate her order. A proper exercise

of discretion rests upon a more complete understanding of the

facts. See Wolosoff v. CSI Liquidating Trust, 205 N.J. Super.

 13 A-4691-15T4
349, 360 (App. Div. 1985). And there were significant disputes

of fact that should have been resolved in some fashion before

Pierce was removed as executor. The statute requires it.

 Courts should be "reluctant to remove an executor as trustee

without clear and definite proof of fraud, gross carelessness or

indifference." In re Estate of Hazeltine, 119 N.J. Eq. 308, 314

(Prerog. Ct.) aff'd, 121 N.J. Eq. 49 (E. & A. 1936). An executor

should be removed when his or her conduct shows bad faith, or

jeopardizes the value of the estate's assets. Bramen v. Cent.

Hanover Bank & Trust Co., 138 N.J. Eq. 165, 197 (Ch. 1946). Based

on our review of the record, Pierce did not engage in misconduct

that approximated the extremes in the statute. See ibid.

 Pierce did not fail to comply with the judge's orders or

otherwise fail to comply with the statutory duties delineated in

N.J.S.A. 3B:14-21. The removal was unwarranted.

 Reversed.

 14 A-4691-15T4